**TOWN OF BARRINGTON**

v.

**Lauchie BLAKE et al.**

**No. 88–541–Appeal.**

Supreme Court of Rhode Island.

Jan. 23, 1990.

Michael P. DeFanti, Stephen A. Rodio, Hinckley, Allen, Synder & Comen, Providence, for plaintiff.

Robert M. Brady, Dworkin & Brady, Warwick, William L. Bernstein, Greenville, for defendants.

## OPINION

KELLEHER, Justice.

This controversy comes before us by way of an agreed statement of facts and a certified question of law posed by a judge of the Rhode Island District Court, pursuant to G.L.1956 (1985 Reenactment) § 9-24-27. This inquiry relates to the constitutionality of a Barrington ordinance, No. 86-6, entitled "Ordinance Regulating Picketing Within The Town Of Barrington" (See Appendix). The municipality is the plaintiff, and the defendants are anti-abortion activists who were arrested for having violated the terms of the ordinance.

This litigation first came before this court in October 1987. At that time we declined to answer the certified question and remanded the case to the District Court for its determination whether the town of Barrington was vested with authority from the General Assembly to enact the ordinance in question. *Town of Barrington v. Blake,* 532 A.2d 955 (R.I.1987). Subsequently, in April 1988, defendants

filed a motion in the District Court to dismiss this litigation on the ground that the town of Barrington lacked the requisite authority to enact the ordinance. The District Court judge denied the motion and once again certified the question relating to the constitutionality of the picketing ordinance.

■ In challenging the town's authority to enact ordinance No. 86–6, counsel for defendants rely on our holding in *Nugent v. City of East Providence*, 103 R.I. 518, 238 A.2d 758 (1968), where this court ruled that the state, rather than the municipalities, was empowered with plenary jurisdiction over streets and highways. In making this observation, this court was considering the validity of a city council resolution that purported to give a utility an exclusive franchise to build and operate in the city of East Providence a community-antenna television system and attach cables and wires to the poles owned and maintained by public utilities over the streets and public places within the municipality. The court, however, noted that the Legislature could, if it so desired, delegate such power to the various cities and towns.

Here this court is not confronted with an unlawful delegation of power because G.L. 1956 (1988 Reenactment) § 45–6–1 in essence provides that a town council may promulgate ordinances and regulations that it deems necessary to prevent persons standing on any footwalk or sidewalk to obstruct, hinder, delay, disturb, or annoy passers-by or persons residing or doing business in the vicinity thereof. Again, G.L.1956 (1982 Reenactment) § 31–12–12, as amended by P.L.1983, ch. 249, § 1 authorizes the towns to enact ordinances to regulate traffic in the respective municipalities and to regulate or prohibit processions or assemblages on public highways. Consequently, having in mind the statutory references to which we have just alluded, we are of the opinion that the Barrington Town Council had the authority to promulgate ordinance No. 86–6. Having reached this conclusion, we shall now consider defendants' constitutional challenge.

The certified question before this court reads,

"Whether the Barrington Town Ordinance number 86–6 entitled 'Ordinance regulating picketing within the Town of Barrington' is unconstitutional either in its entirety or in its application as being violative of the First Amendment to the Constitution of the United States and the First Amendment[1] to the Rhode Island Constitution as it relates to the exercise of the defendants' freedom of speech, freedom of assembly and freedom of expression."

The undisputed facts relevant to this controversy are as follows. Beginning in April of 1986 and continuing on various subsequent occasions, defendants picketed the residence of Dr. Marguerite Vigliani. Doctor Vigliani is a licensed obstetrician/gynecologist who resides with her family on Appian Way, a public highway located in a residential neighborhood in the town of Barrington. Doctor Vigliani maintains an office in Barrington at 461 Maple Avenue.

The picketers carried a small white coffin and displayed signs expressing their anti-abortion sentiments, such as "Fetus equal [*sic*] baby" and "Marguerite Vigliani, M.D. kills babies."[2] This picketing aroused significant criticism from Dr. Vigliani, her neighbors, and other citizens of Barrington. The town council responded to its constituents' concern about the picketing by enacting the ordinance in question.

This ordinance, Barrington Town Ordinance No. 86–6, provides in pertinent part,

"Section 1–2. *Prohibition.* Picket lines and picketing shall be prohibited in front of, adjacent to or with respect to any property used for residential purposes, except where such picketing relates to a

---

1. The reference to the First Amendment to the Rhode Island Constitution is an inadvertence. It is obvious that the litigants' intended reference was Article I, section 21 of Rhode Island's 1986 Constitution.

2. The parties have agreed that the picketing in front of Dr. Vigliani's residence was peaceful and did not obstruct traffic.

use or activity being carried on within such property.

"Section 1–3. *Rules.* Where permitted, picketing shall be subject to the following additional regulations:

a. Picketing shall be conducted only on sidewalks or other Town-owned areas normally used or reserved for pedestrian movement, including easements and rights of way, and shall not be conducted on a portion of any street used primarily for vehicular traffic where in the opinion of the Chief of Police such use would result in a threat to the safety of the pickets or constitute an unreasonable obstruction of traffic."

The defendants reacted to the enactment of the ordinance by shifting the situs of their picketing activities from Appian Way to Dr. Vigliani's Maple Avenue office. Maple Avenue is a two-lane public highway and is one of the more heavily traveled roadways in Barrington. There is no sidewalk immediately in front of Dr. Vigliani's office, although a strip of the office land abutting a highway has been designated as a public right-of-way. The Maple Avenue area contains a mix of both residential and commercial uses.

On the morning of October 17, 1986, defendants were picketing in front of Dr. Vigliani's office when the lawn-sprinkler system was activated by someone in the office, forcing the pickets out onto Maple Avenue. Two defendants were informed by members of the Barrington police department that they were in violation of the picketing ordinance and were requested to stop picketing in the street. The defendants were asked to shift their picketing endeavors to the sidewalk on the opposite side of the street. When they failed to comply with this request and continued picketing in the street, they were arrested and charged with violating terms of the picketing ordinance.

■ The defendants assert that the Barrington ordinance is facially invalid because it unduly infringes upon activities that are protected by the First and Fourteenth Amendments to the United States Constitution and Article I, section 21, of the Rhode Island Constitution. Although we acknowledge that state courts may interpret a state constitution to be more protective of individual rights than the Federal Constitution, *Pruneyard Shopping Center v. Robins,* 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980), we do not believe that Rhode Island's 1986 constitution affords more extensive protection to the picketers than the United States Constitution presently affords.

■ The First Amendment to the United States Constitution bars Congress from enacting any law that "abridges freedom of speech." Section 21 of Article I of Rhode Island's 1986 Constitution, after acknowledging a citizen's right to assemble in a peaceful manner, goes on to declare, "No law abridging the freedom of speech shall be enacted." Consequently, in resolving the issue presented in this litigation, we shall be guided by the pronouncements of the United States Supreme Court. Even though both the Rhode Island and the United States Constitutions protect the rights of individuals to disseminate their views on religious, political, and ethical matters, "[e]ven protected speech is not equally permissible in all places and at all times." *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.,* 473 U.S. 788, 799, 105 S.Ct. 3439, 3447, 87 L.Ed.2d 567, 578 (1985). It is well established that, notwithstanding the presence of the First Amendment, expressive activity may be subject to reasonable time, place, and manner restrictions. *Heffron v. International Society for Krishna Consciousness,* 452 U.S. 640, 647, 101 S.Ct. 2559, 2564, 69 L.Ed.2d 298, 306 (1981). This court subscribes to these sentiments.

■ The United States Supreme Court first recognized picketing as a means of speech or expression protected by the First Amendment in *Thornhill v. Alabama,* 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940). The picketer's right of free expression, however, must be balanced with the individual's right to privacy. Individual privacy rights may be protected by reasonable time, place, and manner regulations on free speech or expressive activity. *Perry Edu-*

*cation Association v. Perry Local Educators' Association*, 460 U.S. 37, 44, 103 S.Ct. 948, 955, 74 L.Ed.2d 794, 804 (1983).

■■ The extent to which the government can impose limitations on First Amendment rights depends upon the nature of the forum. *Perry*, 460 U.S. at 44, 103 S.Ct. at 955, 74 L.Ed.2d at 804. The Supreme Court has delineated three types of forums: the traditional public forum, the designated public forum, and the nonpublic forum. *Id.* at 45–46, 103 S.Ct. at 954–55, 74 L.Ed.2d at 804–05. The traditional public forum includes places that, through the years, have been devoted to assembly and debate. *Id.* at 45, 103 S.Ct. at 954, 74 L.Ed.2d at 804. Streets and sidewalks are quintessential public forums, and the Supreme Court has consistently affirmed the right of demonstrators to use them. *Id.; United States v. Grace*, 461 U.S. 171, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983); *Hague v. C.I.O.*, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939).

In *Frisby v. Schultz*, 487 U.S. 474, ——, 108 S.Ct. 2495, 2500, 101 L.Ed.2d 420, 429 (1988), the Supreme Court concluded, "[A] public street does not lose its status as a traditional public forum simply because it runs through a residential neighborhood." The Court in *Frisby* ruled a municipal ordinance directed at residential picketing must therefore be evaluated under the stringent standards established for restrictions on speech in a traditional public forum. *Id.* Pursuant to this standard, time, place, and manner regulations are enforceable if they are (1) content-neutral,[3] (2) narrowly tailored to serve a significant governmental interest, and (3) afford ample alternative channels of communication. *Id.; Perry*, 460 U.S. at 45, 103 S.Ct. at 955, 74 L.Ed.2d at 804.

At issue in *Frisby* was a town ordinance in Wisconsin that banned focused resi-dential picketing. This ordinance was adopted in response to the persistent picketing by anti-abortion activists at the home of a physician who performed abortions.[4] *Frisby*, 487 U.S. at ——, 108 S.Ct. at 2497–98, 101 L.Ed.2d at 426. The ordinance prohibited "any person to engage in picketing before or about the residence or dwelling of any individual" in the town. *Id.* at ——, 108 S.Ct. at 2496, 101 L.Ed.2d at 426–27. The Supreme Court upheld the ordinance in *Frisby*, ruling that the ordinance met the criteria set forth for a valid time, place, and manner regulation. *Id.* at ——, 108 S.Ct. at 2504, 101 L.Ed.2d at 434.

■ Turning to the Barrington ordinance, this court must consider whether the ordinance is content-neutral. The defendants contend the exception in § 1–2 that permits picketing that "relates to a use or activity being carried on within such property" strips the ordinance of its content-neutrality. They claim that the ordinance creates a distinction based on the content of the picketers' message because residential picketing is permitted if it relates to activities occurring within the picketed residence. The defendants submit that the Supreme Court has consistently struck down governmental restrictions that allow access to public forums for some groups while denying access for others. The defendants rely on *Fowler v. Rhode Island*, 345 U.S. 67, 70, 73 S.Ct. 526, 527, 97 L.Ed. 828, 831 (1953), a case in which the Supreme Court struck down a Pawtucket ordinance that allowed Catholics, Protestants, and other religious groups to conduct services in any public park but denied the same rights to a group of Jehovah's Witnesses.

The defendants also refer us to Supreme Court decisions that have rendered content-based[5] ordinances violative of the Constitu-

---

3. Regulations restricting speech are content-neutral if the predominant concerns of the legislative body are directed to the secondary effects of the speakers' activities rather than the content of the speeches. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986).

4. The doctor did not perform abortions at this residence but at two clinics in neighboring towns.

5. "Content-based" restrictions on speech may regulate speech on the basis of its general subject matter or on the basis of its particular viewpoint. Tribe, *American Constitutional Law* 803 (2d ed.1988).

tion on equal-protection grounds. In *Police Department of Chicago v. Mosley,* 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972), the Supreme Court struck down an ordinance that prohibited picketing near a public school but permitted such picketing if it related to a labor dispute. In *Carey v. Brown,* 447 U.S. 455, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980), the Supreme Court held unconstitutional an Illinois statute that proscribed peaceful picketing in residential neighborhoods but excluded peaceful labor picketing from its prohibition. The Court concluded, "On its face, the Act accords preferential treatment to the expression of views on one particular subject; information about labor disputes may be freely disseminated, but discussion of all other issues is restricted." *Id.* at 460–61, 100 S.Ct. at 2290, 65 L.Ed.2d at 269–70.

We believe that the exemption found in § 1–2 of the ordinance that permits picketing relating to a use or activity carried on within a residence passes constitutional muster. The Barrington controversy is distinguishable from those instances wherein the Supreme Court has invalidated content-based ordinances because no specific group is denied a forum or afforded preferential treatment as a consequence of the Barrington ordinance. In contrast, the regulation at issue applies indiscriminately to all expression without regard to the content of the message expressed.

The exception created by § 1–2 is based on the character of the use of the property, not on the content of the message conveyed. This distinction is consistent with the Supreme Court's analysis in *Frisby,* which also focuses on the use of a residence. The Court indicated,

> "Particular hypothetical applications of the ordinance—to, for example, a particular resident's use of his or her home as a place of business or public meeting, or to picketers present at a particular home by invita tion of the resident—may present somewhat different questions. Initially, the ordinance by its own terms may not apply in such circumstances, since the ordinance's goal is the protection of resi-

dential privacy." 487 U.S. at ——, 108 S. Ct. at 2504, 101 L. Ed. 2d at 434.

The Barrington ordinance is obviously designed to alleviate concerns the Supreme Court expressed in *Frisby* as well as to clarify the scope of the ordinance. A stated purpose of the Barrington ordinance is also the preservation of residential privacy, which may be diminished if a residence has been opened to the public. Thus we conclude that the exemption set forth in § 1–2 of the ordinance does not cast a cloud on the ordinance's content-neutrality because of the First Amendment or the equal-protection clause.

In accordance with the Supreme Court's opinion in *Frisby,* we find the Barrington ordinance advances a significant governmental interest. Section 1–1 of the ordinance provides, "The residents of the Town of Barrington are desirous of being protected in the peaceful and tranquil use of their personal residences. The Town has an abiding interest in assuring that its public rights of way are available for traffic and that persons utilizing the public rights of way for passage on foot do not unreasonably interfere with vehicular use thereof." In addressing the facial challenge to the ordinance, we shall focus on the residential-privacy aspect of the ordinance. The Supreme Court has recognized the importance of "[p]reserving the sanctity of the home, the one retreat to which men and women can repair to escape from the tribulations of their daily pursuits." *Carey v. Brown,* 447 U.S. at 471, 100 S.Ct. at 2295, 65 L.Ed.2d at 276. "The State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society." *Frisby,* 487 U.S. at ——, 108 S.Ct. at 2502, 101 L.Ed.2d at 431 (quoting *Carey v. Brown,* 447 U.S. at 471, 100 S.Ct. at 2296, 65 L.Ed.2d at 276). We subscribe to those sentiments, emphasizing that the Barrington ordinance unquestionably promotes a significant governmental interest, the preservation of "the last citadel of the tired, the weary, and the sick."[6]

---

6. *Gregory v. Chicago,* 394 U.S. 111, 125, 89 S.Ct. 946, 954, 22 L.Ed.2d 134 (1970).

The issue, then, is whether the ordinance is narrowly tailored to serve this legitimate governmental purpose. "A statute is narrowly tailored if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." *Frisby*, 487 U.S. at ——, 108 S.Ct. at 2502, 101 L.Ed.2d at 432 (citing *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 808–10, 104 S.Ct. 2118, 2130–32, 80 L.Ed.2d 772, 789–90 (1984)). The municipal ordinance under scrutiny in *Frisby* completely banned picketing "before or about" any residence or dwelling. *Frisby*, 487 U.S. at ——, 108 S.Ct. at 2497, 101 L.Ed.2d at 426. The Supreme Court narrowly construed this ordinance to avoid constitutional difficulties. *Id.* at ——, 108 S.Ct. at 2501, 101 L.Ed.2d at 430–31. Specifically the Court interpreted the singular form of the words "residence" and "dwelling" to suggest that the ordinance's prohibition was intended to be limited to focused picketing occurring solely in front of a particular residence.[7] *Id.* The Court indicated that general marching through residential neighborhoods or walking a route in front of an entire block of houses was not precluded by the ordinance. *Id.* at ——, 108 S.Ct. at 2501, 101 L.Ed.2d at 431.

The Court in *Frisby* found that the "evil" of targeted residential picketing was the medium of expression itself. *Id.* at ——, 108 S.Ct. at 2504, 101 L.Ed.2d at 434. Justice O'Connor observed, "The type of picketers banned by the Brookfield ordinance generally do not seek to disseminate a message to the general public, but to intrude upon the targeted resident, and to do so in an especially offensive way." *Frisby*, 487 U.S. at ——, 108 S.Ct. at 2503, 101 L.Ed.2d at 433. Accordingly the Court held that the ordinance's total ban of that particular medium of expression was narrowly tailored. *Id.*

We believe the ordinance in the instant case, which proscribes picketing conducted "in front of, adjacent to or with respect to any property used for residential purposes," is also directed at focused residential picketing.[8] As a result, the ordinance's ban is narrowly tailored to serve only those interests it seeks to protect—peace and tranquility in one's home. Justice O'Connor, in writing for the majority in *Frisby*, emphasized, "We have never intimated that the visitor could insert a foot in the door and insist on a hearing. There simply is no right to force speech into the home of an unwilling listener." *Frisby*, 487 U.S. at ——, 108 S.Ct. at 2502, 101 L.Ed.2d at 432. Additionally the Barrington ordinance further narrows the scope of the ordinance by exempting focused picketing that relates to activities conducted within the targeted premises.

Finally we must consider whether the Barrington ordinance allows ample alternative channels of communication. We find that the ordinance does not deny picketers access to an audience. The ordinance permits nonfocused residential picketing, door-to-door solicitation, direct mail, and the distribution of literature. The picketers are also provided the opportunity to picket at a place of business, which is generally a more effective forum to disseminate their views, unless the picketers' objective is only to harass or intimidate an individual.

■ The defendants also assert that the Barrington ordinance is unconstitutional in its application. This contention relates to their arrest pursuant to § 1–3, subsections (a) and (d) of the Barrington ordinance. The defendants claim that § 1–3(a), which operates to prevent picketing where "in the opinion of the Chief of Police such use would result in a threat to the safety of the pickets or constitute an unreasonable obstruction of traffic," vests unbridled discretion in the Barrington chief of police and is therefore unenforceable against defendants.

---

7. The Court also cited Webster's Third New International Dictionary 1710 (1981), which defines "picketing" as posting at a particular place, in support of its narrowing construction. *Frisby v. Schultz*, 487 U.S. 474, ——, 108 S.Ct. 2495, 2501, 101 L.Ed.2d 420, 430 (1988).

8. The town has represented that only single-residence picketing is prohibited by § 1–2 and that the ordinance will be enforced only against single-residence picketers.

The defendants argue that this scheme delineated in the Barrington ordinance is devoid of standards to guide the police chief's determination and refer us to *Shuttlesworth v. Birmingham*, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969), as authority, a case in which the Supreme Court reversed the petitioners' convictions for parading without a permit. The controversial ordinance in *Shuttlesworth* directed the city commission to issue a permit unless, in its judgment, the " 'public welfare, peace, safety, health, decency, good order, morals or convenience required that it be refused.' " *Id.* at 149–50, 89 S.Ct. at 938, 22 L.Ed.2d at 166. We find *Shuttlesworth* inapposite to the case at bar, however. The discretion conferred upon the police chief under the Barrington ordinance vests only when picketing occurs on streets regularly utilized for vehicular traffic. The police chief is also bound by explicitly outlined standards that have for its goal the picketers' safety and the avoidance of the obstruction of motorized traffic, thereby limiting any potential abuse. This limited discretion is insignificant when compared to the discretion that was conferred by the *Shuttlesworth* ordinance when it authorized the city commission to deny a permit solely on the bases of "morals" or "convenience."

 We also conclude that the defendants' challenge to § 1–3(d) is without merit. Section 1–3(d) reads, "Pickets shall walk in single file and not abreast and shall not march closer together than fifteen (15) feet, except in passing one another." We ascertain this provision to be reasonable in light of Barrington's legitimate interests set forth in § 1–1 of the ordinance, and we do not view this regulation to be unduly restrictive.

It is our opinion that the Barrington ordinance challenged in this case, No. 86–6, entitled "Ordinance Regulating Picketing Within The Town Of Barrington," is a constitutionally valid time, place, and manner regulation that survives the challenge made by the defendants pursuant to both the First Amendment to the Constitution of the United States and section 21 of Article I of the Rhode Island Constitution. Accordingly the question certified to this court is answered in the negative, and the record in the case is remanded to the District Court with our decision endorsed thereon.

## APPENDIX

### ORDINANCE REGULATING PICKETING WITHIN THE TOWN OF BARRINGTON

The Town Council of the Town of Barrington hereby ordains:

Section 1. Title Seven of the Ordinances of the Town of Barrington is hereby amended by adding thereto Chapter IV entitled "Regulation of Picketing Within the Town of Barrington", as follows:

"Section 1–1. *Findings.* The Town of Barrington is primarily a residential community. Virtually no residential areas within the Town have public sidewalks, and only limited commercial areas have public sidewalks. The residents of the Town of Barrington are desirous of being protected in the peaceful and tranquil use of their personal residences. The Town has an abiding interest in assuring that its public rights of way are available for traffic and that persons utilizing the public rights of way for passage on foot do not unreasonably interfere with vehicular use thereof.

Section 1–2. *Prohibition.* Picket lines and picketing shall be prohibited in front of, adjacent to or with respect to any property used for residential purposes, except where such picketing relates to a use or activity being carried on within such property.

Section 1–3. *Rules.* Where permitted, picketing shall be subject to the following additional regulations:

a. Picketing shall be conducted only on sidewalks or other Town-owned areas normally used or reserved for pedestrian movement, including easements and rights of way, and shall not be conducted on a portion of any street used primarily for vehicular traffic where in the opinion of the Chief of Police such use would

result in a threat to the safety of the pickets or constitute an unreasonable obstruction of traffic.

b. Not more than ten (10) pickets promoting the same objective shall be permitted to use a public area in which picketing is permitted within one block in the Town at any one time.

c. Such pickets may carry written or printed placards or signs not exceeding two feet in width and two feet in height promoting the objective for which the picketing is being carried on; provided, however, that the words used are not defamatory or violence-provoking in nature. The staff on which such placard is carried shall not exceed 40 inches in length, shall be made of wood, shall not exceed ¾ of an inch in diameter at any point, and shall be blunt at each end.

d. Pickets shall walk in single file and not abreast and shall not march closer together than fifteen (15) feet, except in passing one another.

e. If pickets promoting different objectives desire to use the same public area for picketing and such use would result in the presence of more than ten (10) pickets thereon, the Chief of Police shall allot time to each group of pickets for the use of such public area on an equitable basis.

Section 1–4. *Possession of Weapons.* It shall be unlawful for any person to carry any gun, knife, blackjack, night-stick or other dangerous weapon or instrument utilized as a weapon while participating in a picket line or group demonstration.

Section 1–5. *Interruption of Passage.* Whenever the free passage of any street or other public area in the Town shall be obstructed by pickets, persons picketing shall disperse or move along when directed to do so by a police officer of the Town.

Section 1–6. *Penalty.* Whoever violates any of the provisions of this Chapter shall be fined not more than Five Hundred ($500.00) Dollars. Each violation shall constitute a separate offense.

Section 1–7. *Severability.* If a court of competent jurisdiction shall adjudge to be invalid or unconstitutional any clause, sentence, paragraph, section or part of this Ordinance, such judgment or decree shall not affect, impair, invalidate or nullify the remainder of this Ordinance, but the effect thereof shall be confined to the clause, sentence, paragraph, section or part of this Ordinance so judged to be invalid or unconstitutional."

Section 2. This Ordinance shall take effect upon its passage, and all ordinances or parts thereof inconsistent with the provisions of this Ordinance are hereby repealed.