STATE of Minnesota, Respondent,

v.

Leo CASTELLANO, Appellant.

No. C4–93–356.

Court of Appeals of Minnesota.

Sept. 28, 1993.

Hubert H. Humphrey, III, Atty. Gen., Martin J. Costello, Hughes & Costello, St. Paul, John G. Dillon, Minneapolis, for respondent.

Thomas W. Strahan, Minneapolis, for appellant.

Considered and decided by HUSPENI, P.J., and SCHUMACHER and KLAPHAKE, JJ.

## OPINION

HUSPENI, Judge.

Appellant, convicted of violating a township ordinance that prohibits targeted residential picketing, facially challenges the constitutionality of the ordinance on the grounds of overbreadth and vagueness. We affirm.

### FACTS

On August 24, 1991, approximately 20 men and women were picketing in the area of 5758 Meadowview Drive in the Town of White Bear. Several of the individuals carried graphic signs depicting aborted fetuses. Thomas Webber, Executive Director of Planned Parenthood of Minnesota, who resides at 5758 Meadowview Drive, called the Ramsey County Sheriff's Department to report the noise and disruption caused by the protestors.

A sheriff deputy arrived at 5758 Meadowview Drive and talked to Webber. Webber told the deputy that appellant Leo Castellano

had stood directly in front of his residence for approximately 30 minutes and shouted "Tom Webber in his hour of death" and "Pray for us sinners now and in the hour of Tom Webber's hour of death" numerous times loudly enough to disrupt Webber and several other neighborhood residents.

The deputies informed the group that they would be arrested if they continued to picket in front of Webber's residence on Meadowview Drive. The protestors reluctantly dispersed after the deputy told him he would not debate the legal issues involved and took photographs of the graphic signs. Appellant, however, refused to leave the area and stayed in front of Webber's residence. He stated "I am not a part of the group" and "[t]his is a public street." Appellant then commenced marching in one place as though he was walking but did not physically leave the street in the area in front of Webber's residence. Webber signed a certificate of arrest by private citizen, and a deputy took appellant into custody for violating the targeted residential picketing ordinance. *See* White Bear Township, Minn., Ordinance No. 63.

The trial court denied appellant's motion to dismiss and held that the ordinance was constitutional. Based on stipulated facts, the trial court adjudicated appellant guilty of violating Ordinance No. 63 and ordered him to pay a $60 fine plus a surcharge.

1. In 1990, the Town of White Bear enacted an ordinance regulating targeted residential picketing. The ordinance, in full, provided as follows:
   SECTION 1. DEFINITION. For the purpose of this Ordinance, "targeted residential picketing" means an activity focused on a single residential dwelling without the consent of the dwelling's occupant.
   SECTION 2. TARGETED RESIDENTIAL PICKETING. The Town of White Bear has an interest in the protection of residential privacy within the Town of White Bear and protecting the well-being, tranquility and privacy of the home which is certainly of the highest order in a free and civilized society. The Town Board of the Town of White Bear further finds that, without resorting to targeted residential picketing, ample opportunities exist for those otherwise engaged in targeted residential picketing to exercise constitutionally protected freedom of speech and expression.

## ISSUES

1. Is the Town of White Bear, Minn., Ordinance No. 63 (1990), prohibiting targeted residential picketing, facially unconstitutional on the grounds of overbreadth?

2. Is the Town of White Bear, Minn., Ordinance No. 63 (1990), prohibiting targeted residential picketing, facially unconstitutional under the void for vagueness doctrine?

## ANALYSIS

At issue in this case is a municipal ordinance prohibiting focused, or targeted residential picketing.[1] The constitutionality of an ordinance is a question of law. *See Hibbing Educ. Ass'n v. Public Employment Relations Bd.,* 369 N.W.2d 527, 529 (Minn. 1985) (construction of a statute is clearly a question of law fully reviewable by an appellate court); *State v. Clarke Plumbing & Heating, Inc.,* 238 Minn. 192, 197, 56 N.W.2d 667, 671 (1952) (whether an ordinance is constitutionally valid is a question of law). Although ordinances are ordinarily afforded a presumption of constitutionality, ordinances restricting First Amendment rights are not so presumed. *Goward v. City of Minneapolis,* 456 N.W.2d 460, 464 (Minn.App.1990). The burden of proving the need of such a law rests with the government. *Id.* (citing *Meyer v. Grant,* 486 U.S. 414, 426, 108 S.Ct. 1886, 1894, 100 L.Ed.2d 425 (1988)).

### I. Overbreadth

In the area of freedom of expression, it is well-established that an overbroad

SECTION 3. PROHIBITED. No person shall engage in targeted residential picketing within the Town of White Bear.
   SECTION 4. PENALTY. Every person convicted of a violation of any provision of this Ordinance shall be punished as provided in Ordinance No. 26.
   SECTION 5. SEVERABILITY. Should any section, subdivision, clause, or other provision of this Ordinance be held to be invalid by any court of competent jurisdiction, such decision shall not affect the validity of the Ordinance as a whole, or any part thereof, other than the part held to be invalid.
   SECTION 6. EFFECTIVE DATE. This ordinance shall take effect and be in force from and after its passage and publication.
Town of White Bear, Minn., Ordinance No. 63 (1990).

regulation may be subject to facial review and invalidation even though the application in a particular case may be constitutionally unobjectionable. *Forsyth County, Ga. v. Nationalist Movement,* ——— U.S. ———, ———, 112 S.Ct. 2395, 2400–01, 120 L.Ed.2d 101 (1992). Permitting a facial challenge to allegedly overbroad legislation is an exception to general standing principles. *Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830 (1973). The exception is "based on an appreciation that the very existence of some broadly written laws has the potential to chill the expressive activity of others not before the court." *Forsyth County,* ——— U.S. at ———, 112 S.Ct. at 2401.

■ In order to invalidate a statute or ordinance on its face, the overbreadth not only must be real, but "substantial." *Board of Airport Comm'rs v. Jews for Jesus, Inc.,* 482 U.S. 569, 574, 107 S.Ct. 2568, 2572, 96 L.Ed.2d 500 (1987). The requirement that the overbreadth be substantial arose from the Court's recognition that striking an ordinance on overbreadth grounds imposed "manifestly, strong medicine." *Id.* (quoting *Broadrick,* 413 U.S. at 613, 93 S.Ct. at 2916). The Court has required that there be a "realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court" to facially challenge legislation on overbreadth grounds. *Members of City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 801, 104 S.Ct. 2118, 2126, 80 L.Ed.2d 772 (1984).

The United States Supreme Court addressed the facial constitutionality of an ordinance restricting residential picketing in *Frisby v. Schultz,* 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988). In *Frisby,* the Court found constitutional a Brookfield, Wisconsin, ordinance that provided:

> It is unlawful for any person to engage in picketing before or about the residence or dwelling of any individual in the Town of Brookfield.

*Id.* at 477, 108 S.Ct. at 2498. The Brookfield ordinance stated that its purpose was "the protection and preservation of the home" through assurance "that members of the community enjoy in their homes and dwell-

ings a feeling of well-being, tranquility, and privacy." *Id.* According to the Town of Brookfield, prohibiting residential picketing was necessary because such picketing "causes emotional disturbance and distress to the occupants * * * [and] has as its object the harassing of such occupants." *Id.*

■ An ordinance restricting targeted residential picketing "operates at the core of the First Amendment" because it prohibits picketing on issues of public concern. *Id.* at 479, 108 S.Ct. at 2499. In *Frisby,* the Court stated that restrictions on public issue picketing are typically subject to careful scrutiny because of the importance of "uninhibited, robust, and wide-open" debate on public issues. *Id.* (quoting *New York Times Co. v. Sullivan,* 376 U.S. 254, 270, 84 S.Ct. 710, 720–21, 11 L.Ed.2d 686 (1964)). The Court specifically held that picketing on public streets is "the archetype of a traditional public forum" and such status is not lost because a public street runs through a residential area. *Id.* 487 U.S. at 480, 108 S.Ct. at 2500. Although in a "quintessential public forum[ ], the government may not prohibit all communicative activity," *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983), the government may

> enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.

*Id.*

Respondent argues that White Bear Ordinance No. 63 meets all the requirements of *Frisby.* Appellant, conversely, would have this court find the White Bear ordinance unconstitutional because it does not, in fact, satisfy the requirements of *Frisby.* We agree with respondent that White Bear Ordinance No. 63 is facially constitutional under *Frisby.* However, we believe that *Frisby* compels us to narrowly construe the White Bear Ordinance in order to avoid constitutional overbreadth. We address each of the *Frisby* factors in turn.

## A. Content Neutrality

■ In First Amendment time, place, or manner cases, the principal inquiry in determining whether legislation is content-neutral is "whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 2754, 105 L.Ed.2d 661 (1989). An ordinance restricting expressive activity is content-neutral so long as it is "justified without reference to the content of the regulated speech." *Id.* (quoting *Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984)).

■ The *Frisby* Court accepted the determination of the lower courts that the Brookfield ordinance was content-neutral. *Frisby*, 487 U.S. at 482, 108 S.Ct. at 2501. Appellant argues that *Carey v. Brown*, 447 U.S. 455, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980) compels a conclusion that the White Bear ordinance is not "content-neutral." We disagree and find *Carey* distinguishable. In *Carey* the regulation prohibited residential picketing except for peaceful picketing of a place of employment involved in a labor dispute. *Id.* at 457, 100 S.Ct. at 2288. Because the regulation in *Carey* discriminated among speech-related activities in a public forum based upon content, the Court considered whether the statute was finely tailored to serve a substantial state interest. *Id.* at 462–63, 100 S.Ct. at 2291. The Court determined that exempting labor picketing did not advance the state's asserted interest in protecting residential privacy, *id.* at 465, 100 S.Ct. at 2293, and struck the regulation as unconstitutional.

Appellant has presented no evidence that the Town of White Bear discriminatorily enacted the ordinance specifically to suppress expression espousing opposition to abortion. To the contrary, the White Bear ordinance unequivocally prohibits all targeted residential picketing regardless of the content of speech and is, therefore, content neutral. *See Ward*, 491 U.S. at 791, 109 S.Ct. at 2754.

## B. Valid Governmental Interest

■ In Ordinance No. 63, the Town of White Bear specifically states that it has an interest in protecting residential privacy. A similar significant governmental interest was acknowledged in *Frisby*, 487 U.S. at 484, 108 S.Ct. at 2502. The Court has long recognized that:

> Preserving the sanctity of the home, the one retreat to which men and women can repair to escape from the tribulations of their daily pursuits, is surely an important value. * * * The State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society.

*Carey*, 447 U.S. at 471, 100 S.Ct. at 2295–96. Because the home is "the last citadel of the tired, the weary and the sick," *Gregory v. City of Chicago*, 394 U.S. 111, 125, 89 S.Ct. 946, 954, 22 L.Ed.2d 134 (1969) (Black, J., concurring), and is "one retreat to which men and women can repair to escape from the tribulations of their daily pursuits," *Carey*, 447 U.S. at 471, 100 S.Ct. at 2295, the government may legislate to protect intrusion into the privacy of the home of unwilling listeners. *Frisby*, 487 U.S. at 484, 108 S.Ct. at 2502. The Town of White Bear, in stating its substantial interest "in the protection of residential privacy * * * and [in] protecting the well-being, tranquility, and privacy of the home which is * * * of the highest order in a free and civilized society," *see* Town of White Bear, Minn., Ordinance No. 63, § 2, parallels language of the Court in *Carey*, 447 U.S. at 471, 100 S.Ct. at 2296 (the "State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society"). Thus, the language of the White Bear Ordinance meets fully the requirement that a valid government interest be served by the regulation of expression.

## C. Narrow in Scope

In arguing that Ordinance No. 63 unconstitutionally sweeps too broadly, appellant essentially claims that the ordinance is not narrow in scope. He raises two concerns: (1) the ordinance, in using the word "activity" in describing targeted residential picketing,

includes within the sweep of regulation activity that is clearly protected by the First Amendment; and (2) the ordinance, in prohibiting expression unless the dwelling's "occupant" consents, extends beyond the protection of the unwilling listener. We believe each of these challenges must fail.

■ "A statute is narrowly tailored if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." *Frisby*, 487 U.S. at 485, 108 S.Ct. at 2503 (citing *Taxpayers for Vincent*, 466 U.S. at 808–810, 104 S.Ct. at 2130–32). Even a complete ban can be narrowly tailored if each activity within the proscription's scope is an appropriately targeted evil. *Id.*

*Frisby* held that the Brookfield ordinance was narrowly tailored despite its complete ban on focused residential picketing. The "evil" of targeted residential picketing, the presence of an unwelcome visitor at the home, which the ordinance sought to eliminate was "created by the medium of expression itself." *Id.* at 487, 108 S.Ct. at 2504. *Frisby* noted that the Brookfield ordinance was narrowly directed at the household, not the public, and thus distinguished cases which had struck down complete bans of communication such as handbilling, solicitation, and marching, which communications were directed at broader residential areas.

The type of picketers banned by the Brookfield ordinance generally do not seek to disseminate a message to the general public, but to intrude upon the targeted resident, and to do so in an especially offensive way.

*Id.* at 486, 108 S.Ct. at 2503.

■ The White Bear ordinance, like the Brookfield ordinance in *Frisby*, is "readily subject to a narrowing construction that avoids constitutional difficulties." *See id.* at 482, 108 S.Ct. at 2501. In construing the Brookfield ordinance, the Court stated:

[T]he use of the singular form of the words "residence" and "dwelling" suggests that *the ordinance is intended to prohibit only picketing focused on, and taking place in front of, a particular residence.* * * * "Picketing," after all, is defined as posting at a particular place, a characterization in line with viewing the ordinance as limited to *activity focused on a singular residence.*

*Id.* (emphasis added) (citing Webster's Third New International Dictionary 1710 (1981) to define picketing as "posting at a particular place").

Similarly, Ordinance No. 63 was not intended to circumscribe all "activity,"[2] but only activity constituting picketing in the focused sense. We interpret the White Bear ordinance in a limited fashion to proscribe only "picketing activity" focused on or taking place in front of a particular single residential dwelling. *See id.*[3] So narrowed, the ordinance would not prohibit constitutional distribution of materials to neighborhood residents, or solicitation by mail or in person.

■ Appellant also argues that the White Bear ordinance is not tailored narrowly enough to protect only unwilling[4] listeners in

2. "Activity" is defined as a "specified pursuit in which a person partakes." American Heritage Dictionary of the English Language 18 (3d ed. 1992). In *Frisby*, after construing the Brookfield ordinance to limit picketing focused on a particular residence, the Court noted that its construction was "in line with viewing the ordinance as limited to *activity* focused on a single residence." *Frisby*, 487 U.S. at 482, 108 S.Ct. at 2501 (emphasis added).

3. We believe that implicitly the ordinance requires that the dwelling be used for residential, not business or other pecuniary, purposes when the picketing occurs. The ordinance expressly states that it is intended to protect residential privacy. In *Town of Barrington v. Blake*, 568 A.2d 1015 (R.I.1990), the Rhode Island court applied *Frisby* and held constitutional a targeted residential picketing ordinance which prohibited picketing taking place in front of or adjacent to property used for residential purposes "except where such picketing relates to a use or activity being carried on within such property." *Id.* 568 A.2d at 1017–18. The court noted that the exemption narrowed the scope of the Barrington ordinance beyond *Frisby. Id.* 568 A.2d at 1021.

4. A dissent in *Frisby* noted that the plain language of the Brookfield ordinance applied to communications "to willing and indifferent recipients as well as to the unwilling." *Frisby*, 487 U.S. at 497, 108 S.Ct. at 2509 (Stevens, J., dissenting). The Town of White Bear represents that it drafted Ordinance No. 63 mindful of Justice Stevens' concern.

their homes, and that by extending protection to "occupants" rather than to "residents" the ordinance is unconstitutionally overbroad and vitiates any possibility of narrow construction. We disagree. We believe the word "occupant," as used in the ordinance, has a narrower definition than appellant urges,[5] and makes the White Bear ordinance no broader than the one held constitutional in *Frisby*.

An "occupant" is a person "having possessory rights, who can control what goes on on premises." Black's Law Dictionary 1078 (6th ed. 1990). Black's Law Dictionary also defines "occupant" as "[o]ne who has actual use, possession or control of a thing." *Id.* Webster's defines "occupant" as

> one who takes possession of something that has no other owner and thereby acquires title by occupancy * * * one who takes possession under title, lease, or tenancy at will * * * one who occupies a particular place or premises [such as a] tenant [or a] resident.

Webster's Third New International Dictionary 1560 (1961). Similarly, an "occupant" is

> one that occupies a position or place * * * one who has certain legal rights to or control over the premises occupied.

American Heritage Dictionary of the English Language 1251 (3d ed. 1992).

"Resident," on the other hand, means a "dweller, habitant or occupant." Black's Law Dictionary 1309 (6th ed. 1990). Webster's defines "resident" as "having an abode for a continued length of time" or "one who resides in a place, one who dwells in a place for a period of some duration." Webster's Third New International Dictionary 1931 (1961). "Resident" is also defined as "one who resides in a particular place permanently or for an extended period." American Heritage Dictionary of the English Language 1535 (3d ed. 1992).

In view of the recognized definitions of "resident" and "occupant," we believe that "occupant," as used in the White Bear ordinance, means an individual with a legal right

to possess or to control the single residential dwelling. A guest, visitor, or contractor would not come within the definition of "occupant" because those persons would not have some legal right to possess or control the residence. Whether the ordinance used "resident" or "occupant," its protection would extend to those other than a fee owner and would cover those who had some legal right to possess or control the residence.

Our interpretation of "occupant" as one who has some legal right to possess or control the premises answers, we believe, appellant's concerns that the White Bear ordinance is not narrowly enough drafted to protect only "unwilling" listeners. The words "unless the occupant consents" inform the potential defendant that one not having the status of an "occupant," even though that one be a "willing" listener, has no power to consent.

▮ We also reject appellant's argument that the ordinance is overbroad because it would be violated regardless of whether the occupant was home. Whether or not an occupant is home, the government has an interest in prohibiting targeted residential picketing that invades the sanctity of the home. To somehow justify the intrusion simply because the resident is not home would be to say that the "evil" of targeted residential picketing only results if someone is home. Although we recognize that the ordinance is intended to protect residential privacy and recipients unwilling to receive the communication, an occupant returning home to find picketers focused on his or her home might be persuaded to stay away. Such an individual would be just as much captive as if in the home when the focused picketing commenced. *See Frisby*, 487 U.S. at 488, 108 S.Ct. at 2504.

The targeted picketing ordinance of the Town of White Bear is narrowly tailored to protect unwilling occupants of a single residential dwelling. The ordinance eliminates no more than the exact source of the "evil" it

---

**5.** Appellant argues that the ordinance's use of "occupant" extends its protection to visitors, guests, or even contractors working in a single residential dwelling and other individuals who have a "substantially lessened privacy interest."

seeks to remedy. *See id.* at 485, 108 S.Ct. at 2503.

### D. Alternative Means of Expression

The *Frisby* Court, after narrowly construing the Brookfield, Wisconsin, ordinance "to prohibit only picketing focused on, or taking place in front of, a particular residence," *id.* at 482, 108 S.Ct. at 2501, had no difficulty in determining that the ordinance left open alternative channels of communication. The Court held that the ordinance did not prohibit general marching through neighborhoods, walking a route in front of an entire block of houses, or distributing literature door-to-door or through the mail. *Id.* at 483, 108 S.Ct. at 2502.

■ We agree with the Town of White Bear that Ordinance No. 63 permits general dissemination of ideas protected by the First Amendment. Because the prohibition is limited to targeted picketing focused on and taking place in front of a single residential dwelling, picketers may enter, alone or in groups, residential White Bear neighborhoods, march the public streets, distribute literature, and go door-to-door to proselytize their views. Sufficient alternative channels of communication remain open under Ordinance No. 63, as fully as they did under the Brookfield, Wisconsin, ordinance found to be constitutional in *Frisby*. *See id.*

In summary, the Town of White Bear has demonstrated the need for Ordinance No. 63. *See Goward,* 456 N.W.2d at 464. The ordinance is content-neutral, narrowly tailored to promote a significant government interest, and leaves open alternative means of communication. *See Perry,* 460 U.S. at 45, 103 S.Ct. at 955. Neither the selection of the word "occupant" nor the concept of "activity" as narrowly construed here causes the ordinance to be substantively overbroad under *Broadrick*. Under *Frisby,* White Bear Ordinance No. 63 is a facially constitutional governmental regulation of the time, place or manner of speech.

### II.

■ Finally, appellant contends that Town of White Bear Ordinance No. 63 is void for vagueness. We disagree. The void-for-vagueness doctrine, based upon due process,

> requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.

*Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). In the First Amendment context, the Court has "taken special care to insist on fair warning when a statute regulates expression." *Marks v. United States,* 430 U.S. 188, 196, 97 S.Ct. 990, 995, 51 L.Ed.2d 260 (1977).

Here, the ordinance prohibits all targeted residential picketing unless the occupant of a single residential dwelling has consented. Although appellant attempts to argue the ordinance is vague because a picketer will never know if an occupant will object to the content of the message, the language of the ordinance is clear and unambiguous. Because of the particular intrusiveness that results from targeted residential picketing, such picketing is presumed to be without the consent of the occupant and the ordinance sufficiently gives notice to picketers that focused picketing on a residence is prohibited under the law. *See Kolender,* 461 U.S. at 357, 103 S.Ct. at 1858. Should an occupant consent to the picketers' presence before his or her residence, the municipality will be unable to make a prima facie showing of a violation of the ordinance. The ordinance, therefore, does not give the government unbridled discretion to arbitrarily or discriminatorily enforce the ordinance. *See id.* Ordinance No. 63 provides fair notice that all targeted residential picketing is prohibited. The ordinance is not void for vagueness.

### DECISION

Town of White Bear, Minn., Ordinance No. 63 is facially constitutional.

**Affirmed.**