**Debra Ali DUNHAM, Appellant,**

v.

**Karen P. ROER, Respondent.**

**No. A05–421.**

Court of Appeals of Minnesota.

Jan. 10, 2006.

Jill E. Clark, Golden Valley, MN, for appellant.

Stephen O. Plunkett, Shanda K. Pearson, Rider Bennett, LLP, Minneapolis, MN, for respondent.

Considered and decided by Chief Judge TOUSSAINT, Presiding Judge; DIETZEN, Judge; and CRIPPEN, Judge.*

**OPINION**

DIETZEN, Judge.

Appellant challenges the district court order and judgment granting summary judgment to respondent and dismissing appellant's claims (a) that the harassment definition in Minn.Stat. § 609.748, subd. 1(a)(1) (harassment statute) is facially un-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

constitutional; and (b) for malicious prosecution, abuse of process, and defamation. Appellant contends that the harassment statute is facially overbroad, void for vagueness, and that genuine issues of material fact preclude summary judgment on her other claims. Because we find that the harassment statute is not facially overbroad or void for vagueness; and that there are no genuine issues of material fact that preclude summary judgment, we affirm.

### FACTS

Both appellant Debra Ali Dunham and respondent Karen R. Roer were members of the Wayzata Country Club (WCC). In January 2001, appellant discovered that respondent was having an extramarital affair with her husband. Appellant confronted respondent, who denied the accusation. Because respondent claimed that appellant engaged in various forms of harassment, including giving her the finger at the WCC, respondent sought and obtained an ex parte restraining order against appellant in June 2001. The ex parte restraining order was served on appellant shortly after it was issued.

Respondent asserts that two days after the ex parte restraining order was issued, appellant again gave respondent "the finger" on the WCC golf course. Later that evening, a confrontation occurred between the parties at the WCC, during which appellant stated that she did not know "how [respondent could] show [her] face [at the WCC]" and that "[appellant's] daughter knows what [respondent] did." Respondent summoned the police, who reviewed the restraining order, spoke to the parties and others, and then arrested appellant for violating the ex parte restraining order.

Following an evidentiary hearing, the district court issued a two-year restraining order against appellant on August 29, 2001. The order was based on findings that: (a) appellant called respondent's home eight or nine times in one evening and told respondent's husband about the affair and their membership at the WCC; (b) respondent's lawyer sent letters to appellant's attorney asking her to stop contacting respondent and her husband; and (c) appellant engaged in specific acts of harassment against respondent on five different dates in May and June 2001. The August 2001 restraining order prohibited appellant from harassing respondent by engaging in "[a]ny repeated, intrusive, or unwanted acts, words, or gestures that are intended to adversely affect the safety, security, or privacy of [respondent]." The order specifically prohibited appellant from having any direct contact with respondent "in person, by telephone, or by other means or persons." Appellant did not appeal the issuance of the restraining order.

Respondent asserts that appellant approached her at the WCC in June 2002 and made offensive comments, including calling her a "slut." Appellant adamantly denies that she used the word. Police interviewed the parties and other witnesses and arrested appellant for violating the August 2001 restraining order. A criminal complaint was issued against appellant, and the matter proceeded to trial. Contending that respondent caused the criminal prosecution, appellant presented evidence that the prosecutor spoke to respondent on various occasions concerning the alleged violations. Respondent admitted that she spoke with the prosecutor, but stated that she did not request that appellant be prosecuted. After a jury trial, appellant was acquitted of those charges. Appellant also alleges that respondent wrongfully accused appellant of "giving her the finger" on February 2, 2002 and April 8, 2002, that a summons was improp-

erly issued by the City of Wayzata assistant prosecutor, and that the charges against appellant were later dismissed.

Appellant also contends that respondent was responsible for her membership being terminated at the WCC. Specifically, the WCC board terminated the Dunhams' family membership at the WCC in September 2002. Respondent testified by deposition that prior to the termination, she was unaware that the WCC was investigating the Dunhams' membership. Appellant's husband, Audie Dunham, acknowledged that appellant had been reprimanded previously for violating WCC rules and that the WCC president stated to him that the decision to expel the family was based on (a) appellant's objections to the WCC dress code, (b) appellant's conduct towards respondent, and (c) other violations of WCC rules.

In July 2003, respondent petitioned to extend the August 2001 restraining order for two more years. After an evidentiary hearing, the district court "extended" the restraining order for one year. The order included specific findings that respondent's testimony was credible and appellant's testimony was not credible. Respondent had alleged four incidents of harassment in support of her motion to extend the order. But the court's order relied on a single incident, which occurred at respondent's church on May 7, 2003. On appeal, this court held that (a) the district court did not have authority to "extend" a restraining order beyond two years; and (b) the order was insufficient as a new or initial restraining order because it relied on a single incident of harassment, rather than on repeated

incidents, as required by statute. *Roer v. Dunham*, 682 N.W.2d 179, 182 (Minn. App.2004) (applying Minn.Stat. § 609.748, subd. 1(a)(1) (2002)).[1] There was no allegation of physical or sexual assault. Accordingly, respondent was required to establish the existence of "repeated incidents." Because only one incident was found by the court to have occurred, we reversed the order in an opinion filed on June 29, 2004. *Roer*, 682 N.W.2d at 182.

Appellant alleges that respondent told others that appellant had committed criminal acts and that she was violent. Appellant relies primarily on a letter dated May 22, 2002 from respondent to the WCC. In the letter, respondent complains that mouthwash was pumped into her locker damaging property and that her nameplate was removed from the locker. Respondent's letter acknowledged that "no one ha[d] been seen perpetrating these acts," but that the acts were "consistent with the harassing behavior [respondent had] experienced in the community and at the club by [appellant]."

*Current Litigation*

In May 2003, appellant sued respondent for malicious prosecution, abuse of process, defamation, and other claims. Upon stipulation of the parties, a scheduling order was issued, which set a discovery deadline of March 10, 2004. There were several disputes over discovery issues. First, respondent argued that appellant should be allowed to attend respondent's deposition. The district court granted a protective order that precluded appellant from attending respondent's deposition, but the order allowed appellant to listen to the deposition by telephone in another room. Sec-

---

1. The statute, which remains unchanged, requires a "single incident of physical or sexual assault or *repeated* incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to

have a substantial adverse effect on the safety, security, or privacy of another." Minn.Stat. § 609.748, subd. 1(a)(1) (2004) (emphasis added).

ond, appellant sought to depose the city prosecutor in connection with her claims of malicious prosecution. But the prosecutor objected to the deposition on the basis of prosecutorial privilege. After discussion, appellant's counsel and the city attorney stipulated that appellant served written interrogatories on the city prosecutor. But that process was not completed by the discovery deadline.

On March 8, 2004, appellant sought an extension of the discovery deadline. Following a hearing, the motion was denied. The district court concluded that an extension was inappropriate because the matter was scheduled for trial on June 21, 2004, and appellant had 10 months to complete discovery. The court determined that appellant's claims were "not complicated" and it was "simply too late for more discovery." But the court agreed to honor discovery agreements between counsel as set forth on the record. Apparently, appellant did not follow up on obtaining answers to the interrogatories from the city prosecutor.

In May 2004, appellant sought to amend her complaint to request declaratory relief, alleging that the definition of harassment in Minn.Stat. § 609.748, subd. 1(a)(1) was facially unconstitutional. In separate orders, the district court granted summary judgment for respondent on all claims, granted appellant's motion to amend, and dismissed the claim that the statute was unconstitutional. On appeal, appellant challenges the denial of declaratory relief and the dismissal of her claims for malicious prosecution, abuse of process, and defamation.

## ISSUES

I. Is Minnesota's harassment statute, Minn.Stat. § 609.748, subd. 1(a)(1) (2004), unconstitutionally overbroad or void for vagueness on its face?

II. Did the district court err in granting summary judgment against appellant's malicious-prosecution, abuse-of-process, and defamation claims?

III. Did the district court abuse its discretion in denying appellant's request to extend the discovery period or by ordering that appellant could not be present at respondent's deposition?

## ANALYSIS

### I.

■ Appellant challenges the constitutionality of Minn.Stat. § 609.748, subd. 1(a)(1) (2004) on its face, contending that it is overbroad and void for vagueness. "Evaluating a statute's constitutionality is a question of law." *Hamilton v. Comm'r of Pub. Safety,* 600 N.W.2d 720, 722 (Minn. 1999). Ordinarily, laws are afforded a presumption of constitutionality, but statutes allegedly restricting First Amendment rights are not so presumed. *See State v. Botsford,* 630 N.W.2d 11, 15 (Minn.App. 2001), *review denied* (Minn. Sept. 11, 2001).

■ The United States and Minnesota Constitutions guarantee the right to free speech. U.S. Const. amend. I; Minn. Const. art. I, § 3. This right, however, is not unlimited. Since the ratification of the United States Constitution, "our society, like other free but civilized societies, has permitted restrictions upon the content of speech in a few limited areas, which are 'of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.'" *R.A.V. v. City of St. Paul,* 505 U.S. 377, 382–83, 112 S.Ct. 2538, 2542–43, 120 L.Ed.2d 305 (1992) (quoting *Chaplinsky v. N.H.,* 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942)).

*Standing and Mootness*

 Respondent contends that appellant does not have standing to challenge the harassment statute on void-for-vagueness grounds, and that appellant's challenge is moot. We address the issues of standing and mootness, respectively, before reaching the merits of a constitutional claim. *See, e.g., Kahn v. Griffin,* 701 N.W.2d 815, 821 (Minn.2005) (mootness); *Rukavina v. Pawlenty,* 684 N.W.2d 525, 531 (Minn.App.2004) (standing), *review denied* (Minn. Oct. 19, 2004). Whether a party has standing to sue and whether a claim is moot are questions of law, which we review de novo. *Isaacs v. Am. Iron & Steel Co.,* 690 N.W.2d 373, 376 (Minn.App. 2004) (mootness), *review denied* (Minn. Apr. 4, 2005); *Schiff v. Griffin,* 639 N.W.2d 56, 59 (Minn.App.2002) (standing).

Respondent challenges appellant's standing to assert that the statute is void for vagueness. Because appellant couples her vagueness claim with an overbreadth challenge, we determine her standing in the context of both claims. *See In re Welfare of S.L.J.,* 263 N.W.2d 412, 417 (Minn.1978) ("Although the overbreadth and vagueness doctrines are conceptually distinct, in the First Amendment context they tend to overlap, since statutes are often overly broad because their language is vague as to what behavior is proscribed."); *see also State v. Castellano,* 506 N.W.2d 641, 648–49 (Minn.App.1993) (considering a facial vagueness claim along with a facial overbreadth claim).

 A long-recognized exception to the ordinary rules of standing applies to facial overbreadth challenges. *State v. Mireles,* 619 N.W.2d 558, 561 (Minn.App. 2000) (citing *Broadrick v. Okla.,* 413 U.S. 601, 611–12, 93 S.Ct. 2908, 2916, 37

L.Ed.2d 830 (1973)), *review denied* (Minn. Feb. 15, 2001). Under this exception, the United States Supreme Court has determined that litigants may challenge a statute, "not because their own rights of free expression are violated, but because 'the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.'" *Id.* (citing *Broadrick,* 413 U.S. at 611–12, 93 S.Ct. at 2916); *see also State v. Machholz,* 574 N.W.2d 415, 419 (Minn. 1998) (discussing how the potential "chilling effect" of a facially overbroad statute on constitutionally protected speech justifies recognizing standing to make a facial constitutional challenge, even if the litigant's own activities are not constitutionally protected). Because the very existence of the harassment statute raises the possibility that others may refrain from free speech or expression, we conclude that the exception applies, and that appellant need not establish individual standing.

 Respondent also argues that appellant's challenge is moot because no restraining order is currently in effect against appellant. "[M]ootness can be described as the doctrine of standing set in a time frame: the requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Kahn,* 701 N.W.2d at 821 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 189, 120 S.Ct. 693, 708–9, 145 L.Ed.2d 610 (2000)). When a facial challenge is made, the challenge is moot if the statute has been repealed and is no longer in effect, but the fact that a particular litigant is not subject to enforcement proceedings does not render a facial challenge moot.[2] *E.g., Massa-*

---

**2.** "'Facial' overbreadth challenges should be distinguished from 'as applied' challenges, the

latter involving a judgment as to the constitutionality of a statute based on the harm to the

*chusetts v. Oakes,* 491 U.S. 576, 583–84, 109 S.Ct. 2633, 2638, 105 L.Ed.2d 493 (1989) (once a statute allegedly violating the First Amendment has been repealed, a facial challenge will become moot if the regulation cannot "chill protected expression in the future"). In the context of this facial challenge, it is inconsequential that appellant is no longer subject to a restraining order because the statute itself has not been repealed and is alleged to chill protected future expression.

The "requisite personal interest," which is asserted by appellant on behalf of herself as well as third-parties, has existed throughout the litigation. Thus, we retain jurisdiction over appellant's constitutional claims.

*Overbreadth*

Appellant contends that the harassment statute is unconstitutionally overbroad on its face. The crux of appellant's claim is that the statute violates the right to free speech. The statute defines harassment to include

> a single incident of physical or sexual assault or repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another, regardless of the relationship between the actor and the intended target[.]

Minn.Stat. § 609.748, subd. 1(a)(1). A person who is subject to harassment as defined in the statute may seek a restraining order from the district court. *Id.,* subd. 2. "A petition for relief must allege facts sufficient to show the following: (1) the name of the alleged harassment victim; (2) the name of the respondent; and (3) that the respondent has engaged in harass-

ment." *Id.,* subd. 3(a). Any petition must be accompanied by an affidavit made under oath stating the specific facts and circumstances justifying relief. *Id.*

If the petitioner alleges "an immediate and present danger of harassment," the district court may issue an ex parte temporary restraining order, provided that it "finds reasonable grounds to believe that the respondent has engaged in harassment." *Id.,* subd. 4(a), (b). The ex parte order is effective until a hearing is held on the issuance of a restraining order. *Id.,* subd. 4(c). After a hearing, a court may issue a restraining order effective for no longer than two years if it "finds at the hearing that there are reasonable grounds to believe that the respondent has engaged in harassment." *Id.,* subd. 5(3). A person who violates a restraining order is subject to criminal penalties. *Id.,* subd. 6(a)-(d).

Appellant does not challenge the constitutionality of the first prong of the definition of harassment, i.e., a single incident of physical or sexual assault. Instead, appellant's challenge is directed at the second prong of the definition, i.e., "repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another." Minn.Stat. § 609.748, subd. 1(a)(1).

Appellant claims that the second prong of the definition of harassment is overbroad because it could encompass words or actions protected by free speech under the United States and Minnesota Constitutions. Appellant argues that protected expressions, which appellant alleges include calling another a "slut," expressions of grief, sadness, or joy, and telling someone to stay away from one's home, are all

---

litigating party." *Mireles,* 619 N.W.2d at 561 n. 1 (citing *Turchick v. U.S.,* 561 F.2d 719,

721 n. 3 (8th Cir.1977)). Appellant does not challenge section 609.748 as applied to her.

impermissibly affected by the statutory definition.

■■■ "A statute is overbroad on its face if it prohibits constitutionally protected activity, in addition to activity that may be prohibited without offending constitutional rights." *Machholz*, 574 N.W.2d at 419. "[B]ecause the overbreadth doctrine has the potential to void an entire statute, it should be applied 'only as a last resort' and only if the degree of overbreadth is substantial and the statute is not subject to a limiting construction." *Id.* Fundamentally, "[a] statute should only be overturned as facially overbroad when the statute's overbreadth is substantial." *Id.*

Respondent argues that the language of the statute in question is not overbroad because it does not implicate the First Amendment. Respondent relies on cases involving time, place, and manner restrictions. *See, e.g., Castellano*, 506 N.W.2d at 645 (upholding an ordinance prohibiting targeted residential picketing); *Welsh v. Johnson*, 508 N.W.2d 212, 216–17 (Minn. App.1993) (upholding the application of section 609.748 against person who engaged in targeted residential picketing). We conclude that respondent's reliance on these cases is misplaced. The harassment statute on its face is not a time or place restriction on speech in a public forum. *See* Minn.Stat. § 609.748, subd. 1(a)(1). Instead, it is directed at repeated intrusive or unwanted conduct that potentially could occur at any time or place. *See id.*

■■■ But the state may regulate certain categories of words or conduct without substantially infringing on speech or expressive conduct protected by the First Amendment. In that regard, "fighting words" and "true threats" are not within the area of constitutionally protected speech and may be regulated. *See R.A.V.*, 505 U.S. at 383–84, 112 S.Ct. at 2543; *see also Virginia v. Black*, 538 U.S.

343, 359, 123 S.Ct. 1536, 1547–48, 155 L.Ed.2d 535 (2003) ("true threats"); *Chaplinsky*, 315 U.S. at 572, 62 S.Ct. at 769 ("fighting words"). "Fighting words" are "those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Chaplinsky*, 315 U.S. at 572, 62 S.Ct. at 769. The basic test under the "fighting words" doctrine is whether a person of common intelligence would understand the words as likely to cause the average addressee to fight. *Id.* at 573, 62 S.Ct. at 770. "True threats encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Black*, 538 U.S. at 359, 123 S.Ct. at 1548 (quotation omitted). A statute that is narrowly tailored to ban or regulate unprotected words of conduct, such as "fighting words" or "true threats" does not implicate the First Amendment and cannot, therefore, be successfully challenged as facially overbroad. *See R.A.V.* 505 U.S. at 383–84, 112 S.Ct. at 2543.

■■■ The state may also regulate conduct that is invasive of the privacy of another. *Gormley v. Dir., Conn. State Dept. of Prob.*, 632 F.2d 938, 942 (2d Cir. 1980) (upholding statute prohibiting telephone harassment as not unconstitutionally overbroad because such harassment involves conduct and intrudes on the privacy of others), *cert. denied*, 449 U.S. 1023, 101 S.Ct. 591, 66 L.Ed.2d 485 (1980). In *Gormley*, the court upheld a statute similar to Minnesota's harassment statute, which provided that: "A person is guilty of harassment when ... (3) with intent to harass, annoy or alarm another person, he makes a telephone call, whether or not a conversation ensues, in a manner likely to cause annoyance or alarm." *Id.* at 940 n. 1

(citation omitted). In upholding the statute, the court explained:

> To run afoul of the statute, a telephone call must be made not merely to communicate, but with intent to harass, annoy or alarm and in a manner likely to cause annoyance or alarm. Whether speech actually occurs is irrelevant, since the statute proscribes conduct, whether or not a conversation actually ensues.

*Id.* at 942 (quotations omitted). Because the focus of the statute was on conduct that intruded on the privacy of another, the statute did not violate the First Amendment.

 Here, the focus of the statute is to prohibit repeated and unwanted acts, words, or gestures that have or are intended to have a substantial adverse effect on the safety, security, or privacy of another. *See* Minn.Stat. § 609.748, subd. 1(a)(1). Thus, the language of the statute is directed against constitutionally unprotected "fighting words" likely to cause the average addressee to fight or protect one's own safety, security, or privacy; "true threats" evidencing an intent to commit an act of unlawful violence against one's safety, security or privacy; and speech or conduct that is intended to have a substantial adverse effect, i.e., is in violation of one's right to privacy. *See Black,* 538 U.S. at 359, 123 S.Ct. at 1548 ("true threats"); *Chaplinsky,* 315 U.S. at 572, 62 S.Ct. at 769 ("fighting words");[3] *Gormley,* 632 F.2d at 942. Because the harassment statute only regulates speech or conduct that constitutes "fighting words," "true threats," or substantial invasions of one's privacy, we conclude that the statute is narrowly tailored and is, therefore, constitutional.

Appellant further argues that the statute is overbroad because it focuses on the subjective response of another person, or "target" of the speech or conduct. Appellant relies on Minnesota Supreme Court's decision in *Machholz,* but that case is distinguishable. In *Machholz,* the supreme court held that a different harassment statute, defining criminal-felony harassment, was unconstitutional because it was facially overbroad. 574 N.W.2d at 421. That statute defined "harass" as "intentional conduct in a manner that: (1) would cause a reasonable person under the circumstances to feel oppressed, persecuted, or intimidated; and (2) causes this reaction on the part of the victim." *Id.* at 418 (quoting Minn.Stat. § 609.749, subds. 1(1)-(2) (1996)). The supreme court interpreted that statute to criminalize "*any and all* intentional conduct causing a reasonable person to feel oppressed, persecuted, or intimidated." *Id.* at 420. Because the sweeping language covered protected as well as unprotected speech, the supreme court concluded that the statute was not susceptible to a construction that would narrow its application to "fighting words." *Id.*

The harassment statute challenged in this case does not depend entirely on whether the "target" suffers adverse effects. It requires both (1) *repeated* intrusive or unwanted acts, words, or gestures and (2) a *substantial* adverse effect or an intent to adversely effect the safety, security, or privacy of another. Minn.Stat. § 609.748, subd. 1(a)(1). A single incident of intimidating conduct, such as the con-

---

**3.** This interpretation is consistent with the accepted principle of constitutional interpretation that courts should, when feasible, construe the regulatory effect of statutes challenged under the First Amendment to punish only "fighting words." *See S.L.J.,* 263 N.W.2d at 419 n. 5 (observing that the United States Supreme Court has encouraged state courts "to sustain the constitutionality of their offensive-speech statutes by construing them narrowly to punish only fighting words").

duct analyzed in *Machholz*, is not sufficient under the statute before us. *See id.* Further, the statute before us requires a court to find that there are reasonable, rather than merely subjective, grounds to believe that the accused engaged in harassment. *See id.*, subd. 5(3). In other words, section 609.748 requires both objectively unreasonable conduct or intent on the part of the harasser and an objectively reasonable belief on the part of the person subject to harassing conduct. Therefore, we conclude that the statute does not infringe on constitutionally protected speech and is not unconstitutionally overbroad.

■ Further, there is no showing that the overbreadth can be characterized as "substantial." *See Machholz*, 574 N.W.2d at 419 (observing that a statute to be overturned as overbroad only if the overbreadth is substantial). For example, even if we were to accept appellant's characterization that calling another a "slut" is an expressive opinion protected by the First Amendment, only such expression specifically intended to cause or actually causing a "substantial adverse effect" on another's safety, security, or privacy would satisfy the statutory definition. "[W]hen speech and nonspeech elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *United States v. O'Brien*, 391 U.S. 367, 376, 88 S.Ct. 1673, 1678–79, 20 L.Ed.2d 672 (1968). Here, the governmental interest in protecting individuals against repeated and substantial intrusions far outweighs any incidental expression of personal "opinion." In upholding the issuance of a restraining order under the harassment statute, this court observed:

> We do not suggest that [the harassment statute] mandates "Minnesota nice" or some artificial code of civility, as appellant contends. The legislature has determined that certain conduct is sufficiently offensive and disturbing that it is not tolerable in civilized society. Individuals are free to express outrage. . . . But there are limits to such expressions in order to keep peace in the community. . . . To this end, the harassment laws place carefully limited restraints on individuals whose conduct goes beyond an acceptable expression of outrage and civilized conduct, and instead causes a substantial adverse effect on another's safety, security or privacy.

*Kush v. Mathison*, 683 N.W.2d 841, 845–46 (Minn.App.2004) (holding that the district court did not abuse its discretion by issuing a restraining order under section 609.748 but not ruling on the constitutionality of the statute) (citations omitted). We conclude that the incidental impact on protected speech, if any, does not render the statute substantially overbroad.

*Vagueness*

■ Appellant contends that the harassment statute is unconstitutionally vague on its face, and therefore, violates the right to due process. Both the United States and Minnesota Constitutions provide that a person shall not be deprived of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1; Minn. Const. art. I, § 7. Vague penal statutes are prohibited as a violation of due process. *See State v. Newstrom*, 371 N.W.2d 525, 528 (Minn.1985). If a statute imposes criminal penalties, a higher standard of certainty of meaning is required. *Id.* (citing *Kolender v. Lawson*, 461 U.S. 352, 358 n. 8, 103 S.Ct. 1855, 1859 n. 8, 75 L.Ed.2d 903 (1983)).

■ Appellant contends that the harassment statute is "quasi-criminal" in nature and therefore is subject to the

heightened definiteness requirement of due process. The district court concluded that the harassment statute creates a "quasi-criminal" offense because an individual may be prosecuted for violating a restraining order. We agree.

"Quasi-criminal" statutes are "[l]aws that provide for punishment but are civil rather than criminal in form[.]" *Savina Home Indus., Inc. v. Sec'y of Labor*, 594 F.2d 1358, 1362 n. 6 (10th Cir. 1979). For purposes of a vagueness analysis, "quasi-criminal" statutes are tantamount to criminal ones. *See Women's Med. Ctr. of NW Houston v. Bell*, 248 F.3d 411, 422 (5th Cir.2001) (applying the criminal vagueness analysis to a "quasi-criminal" statute). Here, although the harassment proceeding is civil in nature, criminal sanctions may result if the court order is violated. Minn.Stat. § 609.748, subd. 2, subd. 6(b)-(d) (providing misdemeanor, gross misdemeanor, or felony penalties for violations of restraining orders). Therefore, we conclude that the harassment statute is "quasi-criminal" and is subject to the heightened definiteness requirement.

"[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Newstrom*, 371 N.W.2d at 528 (quoting *Kolender*, 461 U.S. at 357, 103 S.Ct. at 1858). A criminal statute need not be drafted with absolute certainty or mathematical precision. *State v. Enyeart*, 676 N.W.2d 311, 321 (Minn.App.2004). It need only furnish criteria that persons "of common intelligence who come in contact with the statute may use with reasonable safety in determining its command." *State v. Suess*, 236 Minn. 174, 180, 52 N.W.2d 409, 414 (Minn. 1952). "To succeed in a facial challenge to

vagueness outside the context of the First Amendment, a complainant must demonstrate that the law is impermissibly vague in *all* its applications." *Enyeart*, 676 N.W.2d at 320 (quoting *Vill. of Hoffman Estates v. Flipside*, 455 U.S. 489, 497, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362). The rationale for requiring complete vagueness is that "[a] 'facial' challenge ... means a claim that the law is 'invalid *in toto*—and therefore incapable of any valid application.' " *Flipside*, 455 U.S. at 495 n. 5, 102 S.Ct. at 1191 n. 5 (citation omitted).

Here, appellant must demonstrate that the law is vague in all its applications because the statute proscribes only words and conduct unprotected by the First Amendment. But appellant fails to demonstrate that an ordinary person of reasonable understanding would be unable to determine, with reasonable certainty, what *repeated* incidents likely to have a *substantial* adverse effect on the safety, security, or privacy of another are subject to the statute. No reasonable person could inadvertently violate the statute because of an inability to determine what type of conduct is prohibited. A reasonable person would know, for example, that repeated confrontations and incessant, unwanted phone calls over the course of several months could constitute harassment within the meaning of the statute. Therefore, the district court did not err in concluding that the statute is not unconstitutionally vague.

## II.

Appellant contends that the district court erred in granting summary judgment against her malicious prosecution, abuse of process, and defamation claims. On appeal from summary judgment, this court makes two determinations: (1) whether there are any genuine issues of material fact; and (2) whether the district court erred in its application of

the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). "A motion for summary judgment shall be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993). To present a genuine issue of material fact, affidavits must be based on personal knowledge and set forth facts that would be admissible in evidence. Minn. R. Civ. P. 56.05.

 "On appeal, the reviewing court must view the evidence in the light most favorable to the party against whom judgment was granted." *Fabio*, 504 N.W.2d at 761. "The party opposing summary judgment may not establish genuine issues of material fact by relying upon unverified and conclusory allegations, or postulated evidence that might be developed at trial, or metaphysical doubt about the facts." *Dyrdal v. Golden Nuggets, Inc.*, 689 N.W.2d 779, 783 (Minn.2004). "A defendant is entitled to summary judgment as a matter of law when the record reflects a complete lack of proof on an essential element of the plaintiff's claim." *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn.1995).

*Malicious Prosecution*

 Appellant contends that the district court erred by granting summary judgment on her malicious prosecution claim. To state a claim for malicious prosecution, appellant must demonstrate that:

(1) the action was brought without probable cause or reasonable belief that the plaintiff would ultimately prevail on the merits; (2) the action must be instituted and prosecuted with malicious intent; and (3) the action must terminate in favor of [appellant].

*Kellar v. VonHoltum*, 568 N.W.2d 186, 192 (Minn.App.1997), *review denied* (Minn. Oct. 31, 1997). "Probable cause for pursuing a civil action consists of such facts and circumstances as will warrant a cautious, reasonable and prudent person in the honest belief that his action and the means taken in prosecution of it are just, legal and proper." *First Nat'l Bank of Omaha v. Marquette Nat'l Bank*, 482 F.Supp. 514, 522–23 (D.Minn.1979), *aff'd*, 636 F.2d 195 (8th Cir.1980), *cert. denied*, 450 U.S. 1042, 101 S.Ct. 1761, 68 L.Ed.2d 240 (1981). Only "reasonable belief" that probable cause existed is necessary to negate a malicious prosecution claim. *Kellar*, 568 N.W.2d at 192. A cause of action for malicious prosecution "has always been carefully circumscribed, and not favored in law, the reason being that 'public policy favors ... prosecutions and affords such protection of another in good faith and on reasonable grounds as is essential to public justice.'" *Lundberg v. Scoggins*, 335 N.W.2d 235, 236 (Minn.1983) (citation omitted).

Appellant argues that three series of incidents, taken together, demonstrate genuine issues of material fact exist which render summary judgment inappropriate for her malicious prosecution claim. We address each series in turn.

**A. Initial Restraining Orders**

 First, appellant argues that respondent's filing of a petition and affidavit for the ex parte restraining order and restraining order that were in effect from June 2001 until August 2003 constituted malicious prosecution. But appellant does not assert any genuine issues of material fact. In short, the August 2001 restraining order issued to respondent, without other compelling evidence, effectively pre-

cludes appellant from pursuing this claim. Because the district court found that appellant's behavior constituted harassment and it granted the initial restraining order, appellant cannot demonstrate that the petition for the restraining order was brought without probable cause. And because appellant did not appeal that order, she cannot now collaterally attack it.

Appellant also presents no admissible evidence that respondent had malicious intent in seeking the August 2001 order. Appellant's mere belief that the restraining order was sought with malicious intent is insufficient to establish the existence of a genuine issue of material fact. *See* Minn. R. Civ. P. 56.05. Finally, the action did not terminate in favor of appellant because the district court granted relief to respondent and issued the restraining order. Therefore, appellant's claim that the filing of the 2001 petition and affidavit for a restraining order constitutes malicious prosecution fails as a matter of law.

### B. Prosecution for Violation of the Restraining Order

 Second, appellant argues that the June 2002 incident at the WCC in which appellant was arrested for violating the August 2001 restraining order, along with respondent's other allegations that appellant violated the restraining order and appellant's subsequent arrest and prosecution, constituted malicious prosecution.

Appellant claims that witnesses offered different testimony at trial in October 2002 than in the June 2002 police report, and, therefore, this prosecution was brought without probable cause. But appellant failed to establish that testimony incorporated into the police report did not support the prosecution. In 2002, the district

court determined that there was probable cause to make the arrest based on respondent's statement that appellant had violated the restraining order, and the police report indicates that another witness corroborated the statement.

Appellant nonetheless argues that respondent improperly persuaded the city prosecutor to file criminal charges against her, and force the case to trial with resulted in her acquittal. But appellant fails to establish that respondent brought the action, i.e., the criminal complaint, without probable cause. In fact, the action was initiated by the city prosecutor on the basis of an independent exercise of prosecutorial discretion. *See Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 668–69, 54 L.Ed.2d 604 (1978) (noting that decision whether or not to prosecute generally rests entirely with prosecutor); *State v. Herme*, 298 N.W.2d 454, 455 (Minn.1980) (same); *accord Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1, 672 N.W.2d 351, 364 n. 17 (2003) ("The prosecutor's exercise of his independent discretion in initiating and maintaining a prosecution is generally a complete defense to an action for malicious prosecution."). Appellant did not produce evidence that the prosecutor was controlled by respondent and failed to exercise independent discretion.

Appellant also fails to show the second element of malicious prosecution, i.e., that respondent acted with malicious intent in reporting appellant's violations of the restraining order. *See Kellar*, 568 N.W.2d at 192. Appellant speculates that respondent had malicious intent in seeking to bring the charge against her but does not support that speculation with admissible evidence.[4] *See* Minn. R. Civ. P. 56.05.

---

4. Appellant cites Dunnell's Minnesota Digest to define "malice," but fails to meet the defi-

nition she cites. 31 Dunnell's Minn. Digest *Malicious Prosecution* § 2.03 (4th ed.1996).

While appellant is able to satisfy the third criterion, i.e., the criminal charge resolved in her favor, she failed to establish the first two criteria. Here, we have a criminal complaint that was pursued by the city prosecutor, not respondent. And the district court concluded that probable cause existed for the arrest and to proceed with a trial. Given these undisputed facts, summary judgment was appropriate.

### C. Petition for Extension of the Restraining Order

■■■ Third, appellant argues that respondent's petition for an extension of the restraining order in 2003 constituted malicious prosecution. But appellant again fails to meet the first two elements for malicious prosecution, i.e., lack of probable cause for the relief sought and that respondent acted with malicious intent. Here, in extending the restraining order, the district court specifically found that respondent's claims were credible and appellant's testimony was not credible, and that appellant had violated the original restraining order on multiple occasions. And this court's opinion that the facts found by the district court were ultimately insufficient to support a second restraining order does not establish that respondent lacked probable cause to seek additional relief. *See Roer v. Dunham,* 682 N.W.2d 179, 182 (Minn.App.2004). This court did not hold that the underlying petition and affidavits were insufficient to establish probable cause that respondent violated the restraining order; it only found that the findings made by that single incident

of harassment were insufficient to support a new restraining order. *Id.*

Appellant offered no substantial evidence that respondent acted with malice in seeking additional relief in 2003. *See* Minn. R. Civ. P. 56.05. Accordingly, the fact that appellant prevailed on appeal from the 2003 order is insufficient to establish a claim of malicious prosecution.

*Abuse of Process*

■■■ Appellant also contends that the district court erred by granting summary judgment on her abuse-of-process claim.[5] "The essential elements for a cause of action for abuse of process are the existence of an ulterior purpose and the act of using the process to accomplish a result not within the scope of the proceedings in which it was issued, whether such result might otherwise be lawfully obtained or not." *Kellar,* 568 N.W.2d at 192. "[T]he test is whether the process was used to accomplish an unlawful end for which it was not designed or intended, or to compel a party to do a collateral act which he is not legally required to do." *Kittler & Hedelson v. Sheehan Props., Inc.,* 295 Minn. 232, 239, 203 N.W.2d 835, 840 (1973). Mere indirect injury to a person's name or reputation is insufficient to constitute abuse of process. *Hoppe v. Klapperich,* 224 Minn. 224, 232, 28 N.W.2d 780, 787 (1947) (quotation omitted).

■■■ Appellant argues that respondent's applications to the courts and police for establishment and enforcement of the restraining orders were purely retaliatory.

---

Appellant makes no showing that the respondent "instituted a groundless prosecution knowingly and willfully." *Id.*

**5.** The distinction between an action for malicious prosecution and an action for abuse of process is that a malicious prosecution consists in maliciously causing process to be issued, whereas an abuse of process is the

employment of legal process for some purpose other than that which it was intended by the law to effect—the improper use of a regularly issued process.

*Black's Law Dictionary* 977–78 (8th ed.2004) (quoting 52 Am.Jur.2d *Malicious Prosecution* § 2, at 187 (1970)).

But appellant failed to produce admissible evidence in the district court sufficient to establish the existence of genuine issues of material fact. Nothing in the record suggests that respondent used the harassment process to accomplish any result other than limiting appellant's unwanted contacts and harassment described in the petition. The bare allegation that respondent had some greater scheme is insufficient to establish a genuine issue of material fact concerning an unlawful end. Therefore, the district court did not err in granting summary judgment against appellant on the abuse-of-process claim.

*Defamation*

 Appellant argues that the district court erred in granting summary judgment on her defamation claim. To establish a claim for defamation, the claimant must offer proof of (1) a false statement; (2) communication to a third party; and (3) resulting harm to the claimant's reputation in the community. *Weinberger v. Maplewood Review,* 668 N.W.2d 667, 673 (Minn.2003); *Stuempges v. Parke, Davis & Co.,* 297 N.W.2d 252, 255 (Minn. 1980). Damages are presumed as a matter of law where the alleged defamation is a false accusation of criminal activity. *See Becker v. Alloy Hardfacing & Eng'g Co.,* 401 N.W.2d 655, 661 (Minn.1987) (noting that false accusations of criminal activity are defamatory per se).

 Appellant argues that summary judgment was inappropriate because there is evidence that respondent made false statements that appellant "committed criminal acts." Appellant claims that she provided evidence of "defamation by implication," i.e., that respondent led many at the WCC to believe that appellant was "violent" or that they should fear for their safety. But the May 22, 2002 letter from respondent to the WCC does not assert that appellant was engaging in criminal activity or accuse appellant of any criminal activity. The letter did not create a genuine issue of material fact sufficient to preclude summary judgment on the defamation claim.

Appellant claims that other portions of the record, such as respondent's and appellant's depositions, support her claim for defamation. We have carefully reviewed these portions of the record cited by appellant, and they do not support her claim. For example, appellant stated in her deposition that respondent denied the affair in a conversation with a friend, and the friend inferred that respondent was calling appellant a liar. But appellant admitted that her friend did not state that the word "liar" was used in the conversation. In short, appellant failed to provide admissible evidence in support of her claim for defamation. Therefore, the district court did not err in granting summary judgment against appellant.

**III.**

 Appellant challenges two discovery rulings by the district court. The district court has broad discretion in granting or denying discovery requests. *Erickson v. MacArthur,* 414 N.W.2d 406, 407 (Minn.1987). "Absent a clear abuse of discretion, [the district] court's decision regarding discovery will not be disturbed." *Id.* In particular, whether to grant or deny a continuance is within the sound discretion of the district court, and its decision will not be reversed unless it has abused its discretion. *State v. Sanders,* 598 N.W.2d 650, 654 (Minn.1999). The district court has "broad discretion to fashion protective orders and to order discovery only on specified terms and conditions." *Erickson,* 414 N.W.2d at 409.

 Appellant argues that the district court improperly denied her motion

to extend the discovery period in order to take the deposition of the city prosecutor. There is a "presumption in favor of granting continuances to allow sufficient time for discovery." *Rice v. Perl,* 320 N.W.2d 407, 412 (Minn.1982). Accordingly, the court considers two factors when determining whether to grant a continuance. *Id.* First, the court considers whether the moving party has been "diligent in obtaining or seeking discovery." *Id.* Second, the court considers whether the moving party seeks further discovery with "the good faith belief that material facts will be uncovered, or ... [is] merely engaging in a 'fishing expedition.'" *Id.* (citation omitted).

■ Here, appellant failed to establish diligence in obtaining or seeking discovery. The district court determined that (a) appellant's motion to extend the discovery deadline was untimely (because it was brought just two days before the discovery deadline); and (b) appellant had ten months to complete discovery on claims that were not overly complicated. Appellant does not dispute these specific findings. When the city attorney and appellant agreed that the deposition would be taken by written interrogatories, it was incumbent on appellant to obtain timely responses or bring a motion to compel. But appellant failed to diligently follow up with either the city attorney or the district court. On this record, appellant failed to establish good cause, and the district court did not abuse its discretion in denying the motion to extend the discovery period.

■ Second, appellant challenges the protective order that required her to monitor respondent's deposition in another room. Minn. R. Civ. P. 26.03(e) provides that for good cause, the court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: ... that discovery be conducted with no one present except persons designated by the court[.]" Given the history between the parties, the acrimonious nature of the litigation, and the existence of a restraining order in effect at the time of the deposition that precluded contact between the parties, the district court did not abuse its discretion in fashioning the protective order to allow appellant to monitor the deposition without having direct contact with respondent.

■ Finally, respondent moves to strike 16 statements from the fact section of appellant's brief. An appellate court may not base its decision on matters outside the record on appeal and may not consider matters not produced and considered by the district court. *Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988). We have limited our review to the facts that are supported by the record. To the extent that appellant's brief relies on inadmissible evidence, or mischaracterizations of the record, we did not consider it in reaching our decision.

## DECISION

The definition of harassing conduct in Minn.Stat. § 609.748, subd. 1(a)(1) (2004) is neither facially overbroad nor void for vagueness. Appellant failed to present evidence sufficient to establish genuine issues of material fact to support her claims for malicious prosecution, abuse of process, and defamation. The district court did not abuse its discretion in denying appellant's discovery requests. Accordingly, we affirm the district court's grant of summary judgment to respondent and denial of declaratory judgment.

**Affirmed; motion denied.**