*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0198**

Westbrooke Condominium Association d/b/a Meadow Creek
Condominiums, et al., petitioners,
Respondents,

vs.

Melvin Pittel,
Appellant.

**Filed January 12, 2015
Affirmed
Connolly, Judge**

Hennepin County District Court
File No. 27-CV-13-14403

Joseph M. Barnett, David G. Hellmuth, Hellmuth & Johnson, PLLC, Edina, Minnesota
(for respondents)

Matthew L. Fling, Edina, Minnesota (for appellant)

        Considered and decided by Halbrooks, Presiding Judge; Connolly, Judge; and

Minge, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**CONNOLLY**, Judge

Appellant appeals from the district court's issuance of a harassment restraining order (HRO) against him, arguing that his First Amendment rights have been violated because the HRO constitutes a prior restraint on speech. We affirm.

## FACTS

Appellant Melvin Pittel owns a condominium at Meadow Creek Condominiums. Respondents in this case are Westbrooke Condominium Association d/b/a Meadow Creek Condominiums, Peter Rocheford, and Rockford Inc. When the petition was filed, Rockford Inc. was the property management company for Meadow Creek Condominiums, and Peter Rocheford was Rockford Inc.'s property manager. The petition was later amended to include Sharper Management LLC as a petitioner after it purchased Rockford Inc.

Appellant began harassing respondents in 2010. He sent them threatening letters and e-mails and became disruptive during condominium board meetings. In 2011, appellant filed a lawsuit against the Meadow Creek Board of Directors (the board), alleging that they breached their fiduciary duties to condominium owners. The board and Meadow Creek Condominiums filed a counterclaim, alleging that appellant had defamed them. The district court dismissed appellant's claim on summary judgment and concluded that appellant defamed Meadow Creek Condominiums and its individual board members. It found that appellant published defamatory statements on two personal

websites and concluded that appellant's harassment damaged the board members' personal and professional reputations.

On August 23, 2013, respondents filed a petition for an HRO against appellant. Respondents submitted affidavits from several board members in support of their petition. The affidavits alleged that appellant was verbally abusive and intimidated respondents through the use of his three websites: meadowcreekcondos.org, wicklowproperties.com, and rochefordmgmt.com. The website domain names are similar to respondents' legitimate business websites and to the website of the board's president's company, Wicklow Properties LLC. On the websites, appellant stated that respondents were involved in criminal activity and listed personal information about the board members, including the personal telephone number of one board member. Following a hearing on November 21, 2013, the district court issued the HRO after finding that appellant harassed respondents at meetings and online. The HRO requires, among other things, that appellant immediately remove and shut down the websites at issue, not create or maintain any other websites to harass respondents or their agents, and cease posting disparaging comments or personal and private information about respondents on any social media website.[1] The HRO is scheduled to remain in effect until December 2, 2015.

---

[1] The HRO contains several provisions that prohibit appellant from harassing respondents. Appellant only challenges the provision ordering appellant to immediately remove and shut down his websites.

3

Appellant argues that "the [district] court's order requiring [appellant] to immediately remove and shutdown the [websites] is a prior restraint of speech," that violates his constitutional rights. We disagree. The district court may grant an HRO if "the court finds at the hearing that there are reasonable grounds to believe that respondent has engaged in harassment." Minn. Stat. § 609.748, subd. 5(a)(3) (2012). Appellant is challenging the constitutionality of the district court's order. The interpretation and constitutionality of the order is a question of law we review de novo. *Dunham v. Roer*, 708 N.W.2d 552, 562 (Minn. App. 2006), *review denied* (Minn. Mar. 28, 2006).

The United States and Minnesota Constitutions both guarantee the right to free speech. U.S. Const. amend. I; Minn. Const. art. I, 3. The First Amendment serves "to prevent previous restraints upon publication." *Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 713, 51 S. Ct. 625, 630 (1931). A prior restraint "is reviewed bearing a heavy presumption against its constitutional validity." *Minneapolis Star and Tribune Co. v. Schmidt*, 360 N.W.2d 433, 435 (Minn. App. 1985) (quotation omitted). To overcome the presumption, the prior restraint "must be necessitated by a compelling state interest and . . . narrowly tailored to serve that interest." *Id.* (quotation omitted).

First Amendment rights are not without limits. This court has held, in the context of a facial challenge to Minn. Stat. § 609.748, that the statute is constitutional because the state may regulate certain types of words or conduct, such as harassing speech or speech that invades the privacy interests of another, without infringing on the First Amendment. *See Dunham*, 708 N.W.2d at 565-66. The court in *Dunham* noted, "our society . . . has

4

permitted restrictions upon the content of speech in a few limited areas, which are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." *Id.* at 562 (quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382-83, 112 S. Ct. 2538, 2542-43 (1992) (internal quotation omitted)). The court analogized the speech prohibited in the HRO statute to other unprotected speech, such as fighting words and true threats and held that the HRO statute does not implicate the First Amendment because it is narrowly tailored to prohibit unprotected speech. *Id.* at 565.

Appellant does not assert a facial challenge to the HRO statute but argues that it is an unconstitutional prior restraint as applied to him. We disagree. The district court found that appellant "made harassing and disparaging comments and statements regarding [respondents] and their agents . . . on the internet using [his three websites]," and that appellant "reproduced and stated personal identifying information on his websites about [respondents]." Appellant does not challenge these findings.

The record shows that the primary purpose of appellant's websites was to harass and/or defame respondents. On his websites, appellant shared sensitive information about board members that substantially affected their privacy interests, such as identifying information and personal phone numbers. He also stated that the condominium association was run by criminals and was engaged in criminal activity, and he certified that the statements on his websites were accurate and factual. The overall content of the websites did not convey matters of public concern, but rather harassing messages aimed toward respondents. *See Dun & Bradstreet, Inc. v. Greenmoss Builders,*

5

*Inc.*, 472 U.S. 749, 758-59, 105 S. Ct. 2939, 2944-45 (1985) (stating that "not all speech is of equal First Amendment importance," and that speech on "matters of public concern . . . [are] at the heart of the First Amendment's protection.") (quotations omitted). This speech is not protected by the First Amendment because it is harassing and invades respondents' privacy interests; the HRO requires appellant only to shut down his websites and not to create or maintain any websites "to harass [respondents] or their agents." Consequently, we conclude that the district court's order does not infringe on appellant's First Amendment rights because it is narrowly tailored to limit unprotected speech.[2]

Appellant also argues that the order is unconstitutionally vague because it "prohibited him from creating or maintaining any website in the future to harass [respondents] or their agents without defining harassment." We disagree.

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S. Ct. 2294, 2298 (1972). An order is unconstitutionally vague if persons "of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391, 46 S. Ct. 126, 127 (1926).

Appellant relies heavily on *Near* to support his argument. *See Near*, 283 U.S. at 702, 51 S. Ct. at 626. In *Near*, the United States Supreme Court considered the constitutionality of a Minnesota statute that permitted a court to enjoin as a public nuisance the publication of "a malicious, scandalous and defamatory newspaper" or other

---

[2] We do note that this case would be different had the district court prohibited appellant from creating or maintaining any website. Had that been the case, the HRO would certainly infringe on appellant's First Amendment rights.

periodical. *Id.* The district court "perpetually enjoined" a newspaper from publishing "any publication whatsoever which is a malicious, scandalous or defamatory newspaper," after finding that the newspaper had violated the statute. *Id.* at 706, 51 S. Ct. at 627. The Supreme Court held that the statute was unconstitutional and emphasized that the statute did not adequately define what constituted "scandalous and defamatory speech." *Id.* at 712, 51 S. Ct. at 630. Although the court noted that prohibiting the future publication of a newspaper "is of the essence of censorship," it acknowledged that "the protection even as to previous restraint is not absolutely unlimited." *Id.* at 713, 716, 51 S. Ct. at 630-31.

The district court's order in this case specifically prohibits appellant from posting harassing content as defined by Minn. Stat. § 609.748, subd. 1(a)(1) (2012) (defining harassment as "repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another."). This court has held that this statute is not unconstitutionally vague. *See Dunham*, 708 N.W.2d at 568 ("No reasonable person could inadvertently violate [Minn. Stat. § 609.748] because of an inability to determine what type of conduct is prohibited."). The HRO uses the statutory language and prohibits appellant's repeated and unwanted acts or words that have a substantial adverse effect on the privacy of the board members. Moreover, the order does not prohibit appellant from creating new websites, but simply from creating websites to harass respondents. Consequently, we conclude that the HRO is not unconstitutionally vague.

**Affirmed.**

7