*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1261**

Joyce Sammon,
Respondent,

vs.

Kim Halvorson,
Appellant.

**Filed March 28, 2016
Affirmed
Jesson, Judge**

Rice County District Court
File No. 66-CV-14-1886

James R. Martin, Martin Law Office, Faribault, Minnesota (for respondent)

Matthew C. Berger, Peter J. Hemberger, Gislason & Hunter LLP, New Ulm, Minnesota (for appellant)

Considered and decided by Peterson, Presiding Judge; Reilly, Judge; and Jesson, Judge.

## U N P U B L I S H E D   O P I N I O N

**JESSON**, Judge

Appellant argues that there was insufficient evidence to support a harassment restraining order granted against her because the record does not show (1) that she committed objectively unreasonable conduct or intended to harass respondent; (2) that respondent reasonably believed that she was harassed; or (3) that more than one incident

of harassment occurred.  She also argues that the district court improperly declined to admit certain relevant evidence.  Because the evidence sufficiently supports the harassment restraining order and the district court did not abuse its discretion by ruling certain evidence inadmissible, we affirm.

**FACTS**

Appellant Kim Halvorson is an owner of Bio Wood Processing, LLC, a business located in Rice County that recycles wood refuse by grinding it into animal bedding.  In 2011 Bio Wood purchased property for its facility; it obtained a conditional-use permit and began operations in 2012.[1]  Neighboring property owners were vocal opponents of the facility, and they filed numerous complaints regarding alleged violations of Bio Wood's conditional-use-permit requirements.  Respondent Joyce Sammon, who lives approximately one-third mile from Bio Wood, has taken pictures of Bio Wood from the road in front of the facility, complained to police, and testified at a hearing regarding a restraining order against Bio Wood's office manager.

In June 2014, the office manager went to Sammon's home and told her to stop reporting alleged violations against Bio Wood.  Sammon alleged that shortly after that encounter, while Sammon was parked in her driveway, Halvorson exited the Bio Wood driveway, pulled into Sammon's driveway, and blocked Sammon's exit for several minutes.  Sammon further alleged that Halvorson then pulled out on the road, but

---

[1] This court has recently addressed issues relating to Bio Wood's application for an amended conditional-use permit.  *See Bio Wood Processing, LLC v. Rice Cty. Bd. of Comm'rs*, No. A15-0961 (Minn. App. Nov. 16, 2015); *Bio Wood Processing, LLC v. Rice Cty. Bd. of Commr's*, No. A14-0990 (Minn. App. Apr. 13, 2015).

returned and stopped again in Sammon's driveway, that her presence prevented Sammon from backing onto the road for several minutes, and that Sammon was scared because she did not know what would happen.

Sammon alleged that in a separate incident in July 2014, while she sat in a four-wheeler in her pasture next to the road watching her son rake hay, a Bio Wood trucker drove by in a semi-truck and made an obscene gesture towards her. A few minutes later, Halvorson pulled out of the Bio Wood driveway, stopped on the road within feet of Sammon, and held up an object resembling a camera, as if taking pictures of Sammon and her family. She remained there for several minutes.

Sammon filed a petition in district court seeking a harassment restraining order, alleging that Halvorson had frightened her with threatening behavior in retaliation for her complaints about nighttime noise at Bio Wood. She testified at a district court hearing that, as a result of the incidents, she was fearful, had trouble sleeping, and had her adult children move into her house because she was too scared to stay alone.

Halvorson denied that she had ever photographed Sammon or blocked her driveway exit. She testified that she once slowed down to make a U-turn in Sammon's driveway, but when she saw Sammon coming, she went to the next driveway and turned around. She testified that in the July incident, she slowed her van to look at Sammon's antique model tractor, but she was on her cellular phone talking to her daughter at the time and did not take pictures of anyone. She denied that she was angry at Sammon.

The district court found that the June and July incidents amounted to harassing conduct, which had a substantial effect on Sammon's safety, security, or privacy. The

3

district court issued a harassment restraining order prohibiting Halverson from harassing Sammon, having contact with her, or being at her residence or surrounding property. Halverson appeals.[2]

## D E C I S I O N

## I

This court reviews the issuance of a harassment restraining order for an abuse of discretion. *Peterson v. Johnson*, 755 N.W.2d 758, 761 (Minn. App. 2008). We will not set aside the district court's findings of fact unless they are clearly erroneous, and we give due regard to the district court's opportunity to judge witness credibility. Minn. R. Civ. P. 52.01; *Kush v. Mathison*, 683 N.W.2d 841, 843-44 (Minn. App. 2004), *review denied* (Minn. Sept. 29, 2004). But we will reverse a harassment restraining order if it is not supported by sufficient evidence. *Kush*, 683 N.W.2d at 844.

Halverson argues that insufficient evidence supports the district court's finding that harassment occurred. A district court may issue a harassment restraining order if it finds "reasonable grounds to believe that [the actor] has engaged in harassment." Minn. Stat. § 609.748, subd. 5(b)(3) (2014). Harassment includes "repeated incidents of intrusive or unwanted acts, words, or gestures that have . . . or are intended to have a substantial adverse effect on the safety, security, or privacy of another." *Id*., subd. 1(a)(1) (2014). The harassment statute, however, will not provide relief based only on the subjective impressions of the actor or the person complaining of harassment. Rather, it

---

[2] Sammon has not filed a brief, and this court hears the matter on its merits under Minn. R. Civ. App. P. 142.03.

"requires both objectively unreasonable conduct or intent on the part of the harasser and an objectively reasonable belief on the part of the person subject to harassing conduct." *Dunham v. Roer*, 708 N.W.2d 552, 567 (Minn. App. 2006), *review denied* (Minn. Mar. 28, 2006). We will address these requirements in turn.

### Objectively unreasonable conduct

Halvorson first argues that she did not commit objectively unreasonable conduct because, in the June incident, she only turned around in Sammon's driveway, and in the July incident, she merely slowed down to observe Sammon's tractor and took no pictures. But the district court credited Sammon's testimony that in June, Halvorson twice blocked Sammon's exit from her driveway, and that in July, Halvorson parked her van on the road within feet of Sammon's family and appeared to photograph them. We defer to the district court's credibility assessment. *Kush*, 683 N.W.2d at 843-44. Further, other witnesses corroborated Sammon's version of each event. A neighbor riding with Sammon in June testified that Halvorson blocked their exit from the driveway for several minutes from a distance of two-to-three car-lengths away. Sammon's daughter-in-law, who was present during the July incident, testified that Halvorson remained parked for three to five minutes, pointing an object that resembled a camera. The district court did not clearly err by finding that Halvorson's actions in each incident amounted to objectively unreasonable conduct.

Halvorson also argues that the district court erred by issuing the harassment restraining order based on the conduct of the Bio Wood office manager and truck driver, third parties who are not involved in this case. We disagree. In deciding whether to issue

5

a harassment restraining order, the district court may consider the broader context in which the alleged harassment took place. *See, e.g.*, *Witchell v. Witchell*, 606 N.W.2d 730, 732 (Minn. App. 2000) (reading "in context" a father's allegedly harassing statements toward a mother in a visitation notebook, concluding that the statements did not constitute harassing conduct). Here, the office manager's and truck driver's actions, which occurred immediately before Halvorson's own conduct, reflected the broader context of the disagreement between Bio Wood and its neighbors, which the district court was entitled to consider in deciding whether Halverson's conduct amounted to harassment.

In the alternative, Halverson argues that there is insufficient evidence that she intended to engage in objectively unreasonable conduct. *See* Minn. Stat. § 609.748, subd. 1(a)(1) (stating alternative definitions of harassment). But because we have determined that Halvorson engaged in objectively unreasonable conduct, which is sufficient to meet the statutory requirement of harassing conduct, we need not reach this additional argument.

***Objectively reasonable belief that harassment has occurred***

Harassment also requires "an objectively reasonable belief on the part of the person subject to harassing conduct." *Dunham*, 708 N.W.2d at 567. Halverson argues that Sammon is particularly sensitive, and insufficient evidence demonstrates that she had an objectively reasonable belief of a threat to her safety, security, or privacy. But the district court found that, in context, "[r]eviewing the effect upon the victim through an objective lens, any person in [Sammon's] position would be frightened given the

6

circumstances of [Halvorson's] actions." Based on our review of the record, we conclude that the district court's findings on this element are not clearly erroneous.

***Repeated incidents***

Finally, Halvorson argues that there is insufficient evidence that more than one incident of harassment occurred, which is required for a harassment restraining order. Minn. Stat. § 609.748, subd. 1(a)(1). She maintains that, even if the driveway incident was harassment, the alleged photo-taking incident does not form another harassing incident. *See, e.g.*, *Beach v. Jeschke*, 649 N.W.2d 502, 502-03 (Minn. App. 2002) (concluding that a single incident of words was insufficient to support the issuance of a harassment restraining order). But the district court did not clearly err by finding that Halvorson's conduct of appearing to take photos of Sammon's family from close range amounted to objectively unreasonable conduct and that Sammon had an objectively reasonable belief that her privacy was threatened. Therefore, the district court properly considered that conduct as one of repeated incidents of harassment, and the district court did not abuse its discretion by issuing the harassment restraining order.

## II

Halvorson argues that the district court abused its discretion by declining to consider evidence of Sammon's own prior conduct of photographing Bio Wood, which the district court ultimately ruled irrelevant because Sammon had not filed a cross-petition against Halvorson. The decision whether to admit evidence rests within the district court's discretion, and we will not disturb an evidentiary ruling unless the district

7

court has erroneously interpreted the law or abused its discretion. *Kroning v. State Farm Auto. Ins. Co.*, 567 N.W.2d 42, 45-46 (Minn. 1997).

The Minnesota Rules of Evidence provide that only relevant evidence is admissible. Minn. R. Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Minn. R. Evid. 401. Halvorson maintains that Sammon's own acts of photographing Bio Wood tend to show that Halvorson did not act unreasonably by appearing to photograph Sammon. But we disagree that Sammon's photography of a business from a distance is relevant to whether Halvorson acted unreasonably by appearing to take close-range photographs of Sammon and her family. The district court did not abuse its discretion by declining to admit evidence of Sammon's prior conduct.

**Affirmed.**