*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0132**

Darcie Gilliard and on behalf of minor children, petitioner,
Respondent,

vs.

Jacob Alton Leatherman, et al.,
Appellants.

**Filed October 3, 2016
Affirmed
Randall, Judge**[*]

Steele County District Court
File Nos. 74-CV-15-1495, 74-CV-15-1496

Darcie Gilliard, Owatonna, Minnesota (pro se respondent)

Theresa M. Gerlach, Lindsay N. Wells, Gerlach Law Firm, Hastings, Minnesota (for appellants Jacob Alton Leatherman and Sherrie L. Mackay)

Considered and decided by Larkin, Presiding Judge; Rodenberg, Judge; and Randall, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**UNPUBLISHED OPINION**

**RANDALL**, Judge

Appellants challenge the district court's issuance of two harassment restraining orders (HROs) against them, arguing that (1) the district court did not have subject-matter jurisdiction to issue the HROs on behalf of one of the minor children, and (2) there was insufficient evidence to support the issuance of the HROs. We affirm.

## FACTS

Respondent Darcie Gilliard is the mother of two minor children, B.C.S., born in 2001, and I.M.L., born in 2007 ("the children"). Appellant Jacob Leatherman is I.M.L.'s father, and appellant Sherrie Mackay is I.M.L.'s paternal grandmother. All parties resided in Washington until July 2015, when Gilliard moved to Minnesota with the children.

Gilliard and Leatherman were never married, and Gilliard is the custodial parent of I.M.L. There is no evidence in the record that Leatherman was ever awarded custody of I.M.L. or parenting time by a court.[1] However, Gilliard testified that she has "allowed [Leatherman] to have visitation with [I.M.L.]" under the supervision of Mackay. Mackay had temporary custody of I.M.L. in 2013. Gilliard testified that the only reason Mackay had temporary custody "is because when [Gilliard] lost [her] father, [she] lost [her] place. So [she] took that time to regain who [she] was, get it together, get a job, get a place, and then [she] got [I.M.L.] back."

---

[1] The record does show that Leatherman failed to appear at the hearing regarding the parentage of I.M.L.

On July 22, 2015, Gilliard filed two HRO petitions on behalf of her and the children in Minnesota district court; one against Leatherman, and the other against Mackay. In the petition against Leatherman, Gilliard alleged that Leatherman made several verbal threats to her and the children, stole her debit cards and clothing, and took I.M.L. while she had custody. In the petition against Mackay, Gilliard alleged that Mackay made several verbal threats to her and the children, "burned out near" her while she was walking, "got into [her] face while drunk and [belligerent]," and made false accusations about B.C.S. inappropriately touching I.M.L.

On October 21, an evidentiary hearing was held. At the hearing, Gilliard testified that: (1) Leatherman and Mackay threatened to shoot her; (2) in July 2015, Leatherman threatened to "punch [her] in the face and throw [her] out of the car in front of I.M.L."; (3) Leatherman threatened, several times, that she will only get I.M.L. from "his cold dead hands"; (4) Leatherman threatened that he would "kill [her] before [she] got [I.M.L.]"; (5) in 2008 Leatherman threatened to kill her and B.C.S., burn down their house, and take I.M.L. from them; (6) in 2015, Leatherman refused to give Gilliard and I.M.L. their personal items back and told Gilliard he had "thrown them in a [d]umpster where [she] belong[s]"; (7) Leatherman and Mackay made comments on her Facebook page that she is bad mother and that she allows B.C.S. to inappropriately touch I.M.L.; (8) Leatherman and Mackay have filed numerous petitions for restraining orders against her and all of them have been dismissed; (9) Leatherman and Mackay have made false accusations to child protective services (CPS) about her and CPS determined that all of the reports were unfounded; (10) Leatherman threatened to call CPS "until he gets [I.M.L.]";

3

(11) Leatherman and Mackay sent her text messages that she "will never see [I.M.L.] again if they have anything to do with it"; (12) Mackay "burned out right beside [her]"; and (13) Leatherman took I.M.L. while she had custody. Leatherman and Mackay also testified at the hearing. They denied all of Gilliard's allegations.

At the hearing, Leatherman and Mackay moved to dismiss the petitions in regards to I.M.L. for lack of subject-matter jurisdiction. Leatherman and Mackay argued that under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) Minnesota courts do not have subject-matter jurisdiction to issue an HRO on behalf of I.M.L. because Leatherman had initiated a child custody suit in Washington and Washington is the home state of I.M.L. They argued that if an HRO is issued on behalf of I.M.L. then that prevents Leatherman from seeing I.M.L. for the period of time for which the HRO is issued and "that is in essence a custody determination."

In November, the district court denied Leatherman and Mackay's motion to dismiss for lack of jurisdiction and granted the HROs. The district court made the following findings as to Leatherman:

> There are reasonable grounds to believe that [Leatherman] has engaged in harassment of [Gilliard, B.C.S., and I.M.L.] by committing the following acts:
>
> > [Leatherman] physically . . . assaulted [Gilliard] as follows: threatened to shoot [Gilliard], also threatened to punch her and push her out of [a] moving vehicle in the presence of [I.M.L.]
> > . . . .
> > [Leatherman] made uninvited visits to [Gilliard] as follows: at her job and caused a scene resulting in [a] police response
> > . . . .

4

[Leatherman] frightened [Gilliard] with threatening behavior as follows: failed to return [I.M.L.] to [Gilliard] in spite of [a] Court Order, resulting in law enforcement having to retrieve the child

. . . .

[Leatherman] stole property from [Gilliard] as follows: wrongfully refused to return [Gilliard]'s property and [I.M.L.]'s property

. . . .

other: False claims posted on Facebook that [Gilliard] was allowing [B.C.S.] to sexually abuse [I.M.L.]

The harassment has or is intended to have a substantial adverse effect on [Gilliard's] safety, security, or privacy.

The district court made the following findings as to Mackay:

There are reasonable grounds to believe that [Mackay] has engaged in harassment of [Gilliard, B.C.S., and I.M.L.] by committing the following acts:

[Mackay] physically assaulted [Gilliard] as follows: by threatening to shoot her

. . . .

[Mackay] made threats to [Gilliard] as follows: to not return [I.M.L.], "you will never see your daughter again["] to run [Gilliard] over with [Mackay's] car

. . . . [and]

[Mackay] frightened [Gilliard] with threatening behavior as follows: failed to return [I.M.L.] in spite of [a] Court [O]rder, threats to continue to make reports to Child Protective Services, posting on Facebook that [Gilliard] was allowing [B.C.S.] to sexually abuse [I.M.L.]

. . . .

[Mackay] stole property from [Gilliard] as follows: has refused to return property of [Gilliard] and told her [that her] property had been put in [a] dumpster where [Gilliard] belonged

. . . .

The harassment has or is intended to have a substantial adverse effect on [Gilliard's] safety, security, or privacy.

5

In both of the HROs the district court ordered Leatherman and Mackay to not harass Gilliard or the children and to have no direct or indirect contact with them. The district court further prohibited Leatherman and Mackay from being within 500 feet of Gilliard and the children's home. In the HRO against Leatherman, the district court ordered that "[Leatherman] may apply for an amendment of this order to permit contact with [I.M.L.] after he has submitted proof of completion of a domestic violence assessment and completion of recommended programming." Leatherman and Mackay appeal.

**D E C I S I O N**

**I.**

Leatherman and Mackay argue that the district court did not have subject-matter jurisdiction to issue the HROs on behalf of I.M.L. Specifically, they argue that the UCCJEA governs HRO proceedings when a minor child is at issue and therefore Washington courts have jurisdiction because Washington made an initial child custody determination regarding I.M.L. in 2013, Leatherman initiated a child custody suit regarding I.M.L. in Washington, and I.M.L.'s home state at the time the HRO petitions were filed was Washington. We disagree.

Both Minnesota and Washington have adopted versions of the UCCJEA. Minn. Stat. §§ 518D.101-.317 (2014); Wash. Rev. Code §§ 26.27.011-.941 (2014). The "[a]pplication of the . . . UCCJEA[ ] involves questions of subject matter jurisdiction." *Schroeder v. Schroeder,* 658 N.W.2d 909, 911 (Minn. App. 2003). A district court's

determination of subject matter jurisdiction is a question of law, which we review de novo. *Id.*

The UCCJEA states that a court making a custody determination consistent with the relevant provisions of the UCCJEA "has exclusive, continuing jurisdiction over the determination until [certain other conditions are satisfied.]" Minn. Stat. § 518D.202(a); Wash. Rev. Code § 26.27.211. With an exception not applicable here, a Minnesota district court

> may not modify a child custody determination made by a court of another state unless a court of this state has jurisdiction to make an initial determination under section 518D.201, paragraph (a), clause (1) or (2), and:
>
> (1) the court of the other state determines it no longer has exclusive, continuing jurisdiction under section 518D.202 or that a court of this State would be a more convenient forum under section 518D.207[.]

Minn. Stat. § 518D.203. A "[c]hild custody determination" is defined as "a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child. The term includes a permanent, temporary, initial, and modification order." Minn. Stat. § 518D.102(d).

We conclude that the UCCJEA did not preclude the district court from granting the HROs on behalf of I.M.L. Even if, as Leatherman and Mackay argue, Washington courts generally retain exclusive, continuing jurisdiction over children subject to custody determinations made in that state, the record presented to this court lacks any indication that, when the HROs were issued, a Washington court had actually awarded either Leatherman or Mackay custody of, or parenting time with, I.M.L. Thus, there was no

7

Washington custody determination to modify, and the UCCJEA could not preclude the Minnesota district court from granting the HROs because the UCCJEA does not apply. *See* Minn. Stat. § 518D.203.

## II.

Leatherman and Mackay argue that the evidence is insufficient to support the issuance of the HROs. We disagree.

This court reviews the district court's issuance of an HRO for an abuse of discretion. *Peterson v. Johnson,* 755 N.W.2d 758, 761 (Minn. App. 2008). "A district court's findings of fact will not be set aside unless clearly erroneous, and due regard is given to the district court's opportunity to judge the credibility of witnesses." *Kush v. Mathison,* 683 N.W.2d 841, 843-44 (Minn. App. 2004) (citing Minn. R. Civ. P. 52.01), *review denied* (Minn. Sept. 29, 2004). We will reverse the issuance of an HRO if it is not supported by sufficient evidence. *Id.* at 844.

A district court may grant an HRO if the court finds that there are reasonable grounds to believe that a person has engaged in harassment. Minn. Stat. § 609.748, subd. 5(a)(3) (2014). The statutory definition of harassment includes (1) "a single incident of physical . . . assault" or (2) "repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another." Minn. Stat. § 609.748, subd. 1(a)(1) (2014). To obtain an HRO, the petitioner must prove: (1) "objectively unreasonable conduct or intent on the part of the harasser"; and (2) "an objectively reasonable belief on the part of the person subject to harassing conduct" of a substantial adverse effect on the

person's safety, security, or privacy. *Dunham v. Roer,* 708 N.W.2d 552, 567 (Minn. App. 2006), *review denied* (Minn. Mar. 28, 2006); *see* Minn. Stat. § 609.748, subd. 1(a)(1).

*Single incident of physical assault*

Leatherman and Mackay first argue that "[t]here is no evidence in this case of a physical assault or bodily harm to either Gilliard or to the minor children." "[T]o prove a physical assault under the first prong of [Minn. Stat. 609.748(1)(a)(1)], a petitioner must prove the physical aspects of the statutory definition of assault in chapter 609, *i.e.,* 'the intentional infliction of or attempt to inflict bodily harm upon another.'" *Peterson*, 755 N.W.2d at 763 (quoting Minn. Stat. § 609.02, subd. 10(2) (2006)). The threats made by Leatherman and Mackay do not satisfy this definition. Further, there is no evidence in the record that Leatherman or Mackay intended to inflict or attempted to inflict bodily harm on Gilliard. *See id.* The first prong of Minn. Stat. § 609.748, subd. 1(a)(1) is not met.

*Repeated incidents of intrusive or unwanted acts, words, or gestures*

Leatherman and Mackay next argue that "[t]here is insufficient evidence of repeated incidents of intrusive or unwanted acts that had or were intended to have a substantial adverse effect on Gilliard and the minor children." Specifically, they argue that "[t]he alleged verbal threats, while inappropriate, were not harassment according to the statute," their "[c]ontact with CPS was objectively reasonable," "Gilliard's allegation regarding a Facebook post is insufficient to prove harassment," and "Gilliard's personal property was neither stolen nor wrongfully handled."

The record contains sufficient evidence to support the district court's findings that there were reasonable grounds to believe that Leatherman and Mackay engaged in

9

harassment of Gilliard.[2] First, the record supports the district court's finding that there were repeated incidents of intrusive or unwanted acts, words, or gestures. Gilliard testified that Leatherman and Mackay have both threatened to physically harm her, including threatening to shoot her, kill her, punch her in the face, and throw her out of a car, and both have threatened to take I.M.L. from her.[3] Second, Gilliard has met the burden of proving that these threats were objectively unreasonable and that she had an objectively reasonable belief that these threats affected her safety, security, or privacy. Threatening to physically harm someone, especially threatening to shoot or kill them, and threatening to abduct a child from the child's custodial parent "is objectively unreasonable" (you think!) and any reasonable person would feel that her safety and security had been violated. The second prong of Minn. Stat. § 609.748, subd. 1(a)(1) is met. The district court properly issued the HROs on behalf of Gilliard against Leatherman and Mackay.

The record contains sufficient evidence to support the district court's findings that there were reasonable grounds to believe that Leatherman and Mackay engaged in harassment of the children. First, the record supports the district court's finding that there were repeated incidents of intrusive or unwanted acts, words, or gestures. Gilliard testified and the HRO petition states that Leatherman and Mackay have both threatened B.C.S.,

---

[2] We note that the record, including the district court's order, does not include the specific dates of when the alleged verbal threats occurred. The omission of dates in this case does not change our analysis due to the volume of verbal threats that Gilliard alleges and the other specific details she provided.

[3] Appellants argue that Gilliard provided no evidence of the text messages where some of these threats were made. But Gilliard's in-court testimony, subject to cross-examination, is itself evidence of the text messages, and the district court was free to rely on this evidence in making its factual findings.

including threatening to kill him, and have both made false accusations about B.C.S. inappropriately touching I.M.L. Gilliard also testified that Leatherman and Mackay have both threatened to take I.M.L. from Gilliard and that Leatherman made threats to physically harm Gilliard in front of I.M.L. Second, Gilliard has met the burden of proving that these threats and false accusations were objectively unreasonable and that the children had an objectively reasonable belief that these threats affected their safety, security, or privacy. As stated before, threatening to physically harm someone, especially threatening to kill them, and threatening to abduct a child from the child's custodial parent is objectively unreasonable and any reasonable person would feel that his or her safety and security had been violated. Further, knowingly making false statements accusing someone of inappropriately touching a sibling or knowingly making false statements alleging that someone is being inappropriately touched by their sibling is also objectively unreasonable and any reasonable person would feel that his or her privacy had been violated. The second prong of Minn. Stat. § 609.748, subd. 1(a)(1) is met. The district court properly issued the HROs on behalf of the children against Leatherman and Mackay.

**Affirmed.**

11